**In the Matter of Lawrence J. EATON, Debtor.**

**FIRST BANK (N.A.), Plaintiff,**

v.

**Lawrence J. EATON, Defendant.**

**Bankruptcy No. 83–00550.
Adv. No. 83–0364.**

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 27, 1984.

Paul Gossens, Gossens, Guyette & Poehl-mann, S.C., Milwaukee, Wis., for debtor.

Thomas M. Barrett, Smith & O'Neil, S.C., Milwaukee, Wis., for plaintiff.

C.N. CLEVERT, Bankruptcy Judge.

The plaintiff, First Bank N.A. ("Bank"), filed a complaint to have its debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) on the ground that Lawrence Eaton ("Eaton"), the debtor, falsely implied he had a right to pledge several diamonds as additional security thereby causing the Bank to forbear from calling its demand loans. For the reasons that follow, the court finds that the debt is dischargeable.

## FACTS

The court finds the facts as follows. Eaton, a certified public accountant, was involved in various business ventures. As Eaton's businesses experienced problems, Eaton borrowed money from the Bank, securing demand loans by pledging securities, life insurance, a certificate of deposit and bonds.

As of April 22, 1981, Eaton had demand loans of $61,000 which were secured by property valued at $42,000. Due to the Bank's concern about Eaton's ability to repay his loans, Larry Larsen ("Larsen"), the bank officer then handling the account, called Eaton and asked about additional security or immediate payment of the loans. The conversation resulted in Eaton agreeing to meet Larsen on the following day and to bring diamonds which he had previously given to his wife and daughters. Larsen correspondingly agreed that the Bank would have the diamonds appraised and would determine whether it would make an additional loan.

The following day, Eaton met Larsen, left the diamonds, got a receipt and signed a collateral pledge agreement. At no time did Larsen ask Eaton if he had authority to pledge the diamonds, even though both men had previously discussed that the diamonds had been given to Eaton's wife and daughters as gifts.

The week after the meeting Eaton called Larsen and asked whether he would get a new loan. Larsen told him that the diamonds would not support another loan, whereupon Eaton asked that the diamonds be returned. Larsen refused and told Eaton the diamonds would be retained as collateral for the existing loans.

In the fall of 1981, Eaton allowed the Bank to liquidate collateral other than the diamonds. Consequently, the loan balance was reduced to $25,685 which the Bank demanded Eaton to pay in full. When payment was not made, the Bank sued Eaton to collect the amount due. Judgment was entered in June, 1982, at which time the Bank still held the diamonds.

In January, 1983, Eaton's wife sent a letter to the Bank demanding return of the diamonds. An affidavit accompanying the letter stated that she and her daughters were the owners of the diamonds and they

had not given Eaton permission to pledge them. The diamonds were, therefore, returned and this suit was subsequently filed.

■ The above facts constitute the court's findings of fact under Bankruptcy Rule 7052.

## ISSUES

There are three issues for discussion:

1) Does the Bank's forbearance from calling in demand notes, caused by Eaton's pledging of the diamonds, constitute an extension, renewal or refinance within the meaning of 11 U.S.C. § 523(a)(2)?

2) Did the Bank reasonably rely on Eaton's pledging the diamonds which the Bank knew belonged to his wife and daughters?

3) Did the Bank sustain its alleged loss as the proximate result of the representations made in pledging the diamonds?

## DISCUSSION

### 1. Forbearance

Section 523(a)(2)(A) provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Hence, a party seeking to except a debt from discharge under Section 523(a)(2)(A) has the burden of proving by clear and convincing evidence that (1) the debtor made false representations; (2) that the debtor knew the representations were false; (3) that the debtor made the representations with the intention of deceiving

the creditor; (4) that the creditor relied upon the representations; and (5) that the creditor was injured as the proximate result of the representations. Furthermore, the creditor must show the debt was based upon the debtor obtaining money, property, services, or an extension, renewal or refinance of credit.

Here, the Bank, relying on *Lincoln First Bank, N.A. v. Tomei (In re Tomei)*, 24 B.R. 204 (W.D.N.Y.1982), argued that when Eaton pledged his wife's and daughters' diamonds he caused the Bank not to demand immediate repayment of its loans and that that constituted an extension, renewal or refinance of credit. Eaton, relying on *Cement National Bank v. Colasante (In re Colasante)*, 12 B.R. 635 (E.D.Penn. 1981)[1] argued that the bank did not demand payment so there could not have been an extension, renewal or refinance of credit within the ambit of Section 523(a)(2)(A).

■ This court's analysis of the evidence has lead it to conclude that Larsen gave Eaton the option of immediately paying his demand loan or providing the Bank with additional security. This option was tantamount to the Bank orally demanding payment. Thus, Larsen's acceptance of the diamonds as security in exchange for continuance of Eaton's loans was an extension or enlargement of credit.

The court has, therefore, rejected Eaton's characterization of the evidence. It has also declined to follow the *Colasante* finding that forbearance in calling demand notes is not an extension or renewal of credit; first, because the decision is inconsistent with ordinary business practices and secondly, because it does not provide persuasive support for its conclusion.

A creditor attempting to have a debt excepted from discharge under Section 523(a)(2)(A) must show that its debt arose from an extension, renewal or refinance of credit. Because the term extension is gen-

---

**1.** This case was decided under § 17(a)(2) of the Bankruptcy Act of 1898, the predecessor of § 523(a)(2).

erally understood to include such things as lengthening, stretching and spreading and forbearance from calling a demand loan has the effect of lengthening, stretching and spreading the loan period, this court is satisfied that the Bank extended or enlarged Eaton's credit as required by Section 523(a)(2)(A).

## 2. Reasonable Reliance

■ Even after a creditor has proven that it has extended credit on the basis of false representations, it still may not prevail in a case brought pursuant to Section 523(a)(2)(A) unless it also proves that it *reasonably* relied upon those representations. *First National Bank of Lansing v. Kreps (In re Kreps),* 700 F.2d 372 (7th Cir.1983), *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252 (7th Cir. 1980).

The evidence before this court indicates that at the time Eaton met with Larsen concerning his loans, Larsen knew the diamonds that were subsequently pledged had been given to Eaton's wife and daughters as gifts. Yet, Larsen did not request any evidence of Eaton's authority to pledge the diamonds. Nonetheless, the Bank argued that Eaton's silence regarding his authority together with his signature on the pledge agreement were sufficient proof of Eaton's authority so that the Bank's reliance was reasonable. While this reliance may normally be reasonable, Larsen's actual knowledge of the ownership of the diamonds imposed an obligation on him to inquire not only into Eaton's actual authority, but also to obtain the actual owners' signatures on the pledge agreements. Here the Bank was simply burying its head in the sand when it did not inquire whether the known true owners of the diamonds had given Eaton permission to pledge them as collateral. Claimed reliance upon Eaton's representations in light of those facts is so unreasonable so as to make it no actual reliance at all.

**2.** The court further observes that there was no evidence regarding the value of the diamonds. So, there is no way of knowing how much of

## 3. Loss and Proximate Result.

Another element of proof which must be established by a creditor proceeding under Section 523(a)(2)(A) is evidence that loss or damage was the proximate result of the debtors representations. In the case at bar, the Bank argued that if it had called its loans in April, 1981, Eaton could have borrowed money from other sources or given it additional collateral. Hence, it concluded that the unpaid balance on its loans was the proximate result of Eaton's implied representation that he was authorized to pledge his wife's and daughters' diamonds.

The court disagrees and finds that collection from other than Eaton's collateral was sheer speculation. Although the evidence offered at trial indicated that Eaton held notes from his various partnerships at the time the Bank asked him for payment or additional security, there was no evidence that the notes were ever collectible. Indeed, the contrary appeared to be true, based upon Larsen's testimony that partnerships with which Eaton was affiliated appeared to be engaged in the alleged check kiting scheme which gave rise to the Bank's concern.

Thus, in the absence of any evidence that the Bank could have collected its loan but for its forbearance, the court cannot find that Eaton's loan remains unpaid as the proximate result of his implied representation of authority to pledge his family's property.[2]

In view of the foregoing, the court finds that the Bank's complaint must be dismissed and that Eaton's debt is dischargeable.

Eaton's loan could have been paid even if the diamonds had been properly pledged and liquidated.