**In re William Glen CRAWFORD and Rachel Madge Crawford, Debtors.**

**TOWN & COUNTRY BANK, a California corporation, Plaintiff,**

v.

**William Glen CRAWFORD, aka William G. Crawford, etc., and Rachel Madge Crawford, etc., Defendants.**

No. CV 83–2665–ER.

Bankruptcy No. SB 82–04683–WH.

United States District Court, C.D. California.

June 27, 1986.

Michael Leight, Seal Beach, Cal., for plaintiff.

Michael A. Hearn, Orange, Cal., for debtors and defendants.

## OPINION

RAFEEDIE, District Judge.

This appeal from a decision of the Bankruptcy Court came before the court for oral argument March 3, 1986. Appellants are Town and Country Bank ("the bank") and appellees are debtors William Glen Crawford and Rachel Madge Crawford ("the Crawfords"). This is the second time this case has been before the court. After the first argument, this court remanded the case to the Bankruptcy Court for additional findings of fact. The additional findings were made and the parties given an opportunity to supplement their briefs. The court has reviewed the initial and the additional findings of fact by the Bankruptcy Court and the original and supplemental briefs of the parties. The decision of the Bankruptcy Court is AFFIRMED.

## FACTS

On October 20, 1980, the bank loaned $20,000 to Americorp International Limited ("Americorp"). The note was signed by a John Young and Patricia Maxwell. Later a personal guaranty was signed by Young, Maxwell, and debtor William Crawford. All three individuals submitted financial statements to the bank. Mr. Crawford indicated in his financial statements that his annual salary was $39,000 and that he received $7,800 a year in rental income and $800 a year in interest income. Crawford also listed a house at 9162 Tristan St. in Garden Grove, California as property he owned as well as another house. The bank made the loan to Americorp and Americorp defaulted.

On December 14, 1982 the Crawfords filed for Chapter 7 bankruptcy seeking to discharge their debts, including their obligation to the bank.

On January 20, 1983 the bank filed a complaint objecting to the discharge. The bank argued that Mr. Crawford made false representations on his financial statement making the loan non-dischargeable under 11 U.S.C. § 523. Alternatively the bank argued that the Crawfords transferred property in the year prior to filing for bankruptcy to hinder creditors and made false oaths or accounts in connection with this proceeding in violation of 11 U.S.C. § 727. The Bankruptcy Court rejected both arguments and ruled that the debt to the bank was dischargeable.

## STANDARD OF REVIEW

The findings of fact of the Bankruptcy Court "shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. "A finding of fact is clearly erroneous when the reviewing court on the entire evidence is 'left with the

definite and firm conviction that a mistake has been committed.'" *Dollar Rent a Car v. Travelers Indemnity*, 774 F.2d 1371, 1374 (9th Cir.1985), *quoting United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

## MISREPRESENTATIONS IN THE FINANCIAL STATEMENT

■ The party objecting to the discharge has the burden of proving its objection. Bankruptcy Rule 4005. Exceptions to discharge are strictly construed in favor of the debtor. *Re Linn*, 38 B.R. 762 (B.A.P. 9th Cir.1984). The party objecting to discharge must prove its case by clear and convincing evidence. *Re Eaton*, 41 B.R. 800 (E.D.Wis.1984).

11 U.S.C. § 523 provides that a debt will not be discharged if the funds were obtained by use of a statement in writing:

    (i) that is materially false;

    (ii) respecting the debtor's financial condition;

    (iii) on which the creditor reasonably relied; and

    (iv) that the debtor caused to be made with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

The bank contends that Mr. Crawford over-represented his income and assets on the financial statement he submitted to the bank in connection with the Americorp loan application. There was evidence presented below that would support a finding that Mr. Crawford exaggerated his income on the financial statement. The Bankruptcy Court assumed that there were material misrepresentations about Mr. Crawford's financial condition on the statement, but the court further concluded that the bank failed to prove reliance on these misrepresentations.

■ The key testimony on the reliance issue came from James Preston, Senior Vice President of Town and Country Bank and the man who approved the Americorp loan. *Reporter's Transcript* at 27–38. Preston testified that if any statement on Mr. Crawford's financial statement had been changed, he would not have approved the Americorp loan. Thus, if Mr. Crawford's income had been $25,000 instead of $39,000, the loan would have been denied. Or, if Mr. Crawford did not have rental income of $7,800, the loan would have been denied. Similarly, if Mr. Crawford did not own the house in Garden Grove in 1980 when the loan was made, the loan would have been denied. The bank relies on this testimony to prove that it did indeed rely on the misrepresentations on the financial statement when it decided to loan Americorp $20,000.

The Bankruptcy Judge did not fully believe Preston's testimony on this issue. The Bankruptcy Judge, finding certain aspects of Preston's testimony self-serving and relying on the testimony that came out during cross-examination, found that the bank had relied on the financial statements submitted by the two other guarantors who had actually signed the Americorp note, not on the financial statement submitted by Mr. Crawford. At several points during the cross-examination, Preston could not recall certain aspects of what transpired when Crawford signed the guaranty. The court below concluded "that the Bank did not rely on Crawford's financial statement in determining to make the loan."

After reviewing the record, it cannot be said that this finding was clearly erroneous. It is conceivable that when three individuals guarantee a $20,000 note, the bank would rely on the two principal guarantors (who actually signed the note) rather than on the third guarantor. What actually influenced Preston in making the decision to loan funds to Americorp is, of course, best determined by the trier of fact who had the opportunity to observe Preston's testimony. While Preston's uncertainties about certain events related to Crawford's guarantee were on fairly minor points, those uncertainties may have contributed to the Bankruptcy Judge's conclusion that Preston relied on the financial statements of Young and Maxwell, the other guarantors, rather than on the financial statement submitted by Crawford. Additionally, the

Bankruptcy Judge implied that the bank's counsel was leading the witness during the witness' most favorable testimony for the bank which may have influenced the court below in weighing Preston's testimony.

Reliance is a question of fact. This court does not have a definite and firm conviction that the court below was wrong in finding a lack of reliance. Therefore, the decision in favor of the debtor on the 11 U.S.C. § 523 claim is affirmed.

■ There is ample evidence on the record to support the Bankruptcy Court's original finding that Crawford did not intend to deceive the bank by the financial statement. *Findings of Fact and Conclusions of Law,* Para. 8. Crawford testified he signed a blank financial statement and Maxwell filled in the numbers. It is not clear that Crawford knew why the form was necessary. The finding that Crawford did not intend to deceive the bank is not clearly erroneous. This is an alternative basis for affirming the decision below on the 11 U.S.C. § 523 claim. Finally, it should be noted that Crawford listed real estate equity of $151,000 on the statement. The bank does not dispute that $76,000 of that equity, equity in the Crawford's home in Norco, California, actually existed at the time.

### FRAUDULENT TRANSFERS

11 U.S.C. § 727(a)(2) states that debts shall not be discharged if "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition."

The Chapter 7 petition was filed December 14, 1982. The bank contends the Crawford's transferred two pieces of property without fair consideration within a year prior to that date—the house in Garden Grove and the Crawfords' 1974 Bayliner boat.

The court below found that the house was not transferred within a year prior to the bankruptcy petition and that the boat was sold for fair consideration.

Both transfers are suspect, since they were made to the Crawfords' son, but there is ample evidence to support the findings of the court below.

■ The position of the Crawfords is that they transferred the house to their son John in August 1981, more than a year before filing for bankruptcy. The undisputed testimony below was that the Crawfords moved out of the house in December of 1977 (when they apparently bought another house) and their son moved in. The Crawfords intended to transfer ownership in the house to their son on the condition that he take over payments on both the first and second mortgage, and a grant deed to that effect was signed in 1977. The evidence reflects that in 1977 John began making payments on the first mortgage and as of August 1981, John began making payments on the second mortgage. During August 1981 the Crawfords delivered the deed to John. The deed was not recorded until June 25, 1982.

Under California law, the transfer took place in August 1981 when the deed was delivered. Cal.Civil Code § 1054. Thus it was not within a year preceding the bankruptcy petition. Moreover, the court below found that even if the transfer had taken place during 1982, the evidence did not support a finding that the transfer was done with the intent of defrauding creditors. This finding cannot be considered clearly erroneous. The testimony and documentary evidence indicates that it was in 1977 that the Crawfords decided to transfer the house to their son.

■ The Crawfords' eight year old boat was transferred within the year before the bankruptcy (*i.e.* July 1982) to the Crawfords' son. The son paid $1,500 for the boat. Two years earlier Mr. Crawford had listed the boat on his financial statement as an asset in which he had $5,000 in equity. The bank points to the disparity between $5,000 and $1,500 to show that the boat was transferred without fair consideration.

The original findings of fact of the Bankruptcy Court were that the Crawfords

"transferred a 1974 Bayliner boat to their son John D. Crawford for valuable consideration and without intent to injure, delay or defraud their creditors." *Findings of Fact and Conclusions of Law*, Para. 4. The supplemental findings of the court below were "the evidence is lacking to show the court a basis upon which to judge whether or not the transfer was for value or not. Based on the information at hand it appears to the court that debtor could no longer afford the boat and disposed of it in the best way he could." *New Findings of Fact and Conclusions of Law*, Para. 2.

The findings of the Bankruptcy Court reflect an uncertainty based on the records as to the true worth of the eight year old boat in 1982. The only evidence in the record concerning the value of the boat, other than the testimony of Mr. Crawford that he believed the market value was $1,500, was Crawford's 1980 financial statement listing the value of the boat at $5,000 in 1980 and another statement that the boat was valued for tax purposes at $4,100. The court below understandably did not rely on the estimated value in the financial statement because the court below assumed, at the urging of the bank, that Crawford had overvalued his assets in the financial statement. The information about the value of the boat on the tax rolls was stricken from the record. This leaves little, if any, evidence on the record as to the fair market value of the boat in 1982 when it was sold. There was evidence that there was still an outstanding loan on the boat in 1982 because the Crawfords' son assumed the payments for the boat when it was transferred to him. *Reporter's Transcript* at 17. Despite the suspicious nature of the transaction, it cannot be said that the sale for $1,500 of an eight year old boat that carried with it a certain amount of indebtedness was not for fair consideration. Crawford testified that the boat was sold for market value. *Reporters Transcript* at 16. The Bankruptcy Court chose to rely on that testimony, given the absence of any testimony from any other witness as to fair market value of the boat.

The court's findings regarding transfers in the year before the bankruptcy petition are not clearly erroneous or contrary to law.

## FALSE OATHS

Finally, the bank argues that the Crawfords made false oaths on their Statement of Affairs to the Bankruptcy Court in connection with the Chapter 7 proceeding. Debts shall not be discharged in a Chapter 7 proceeding if "the debtor knowingly and fraudulently, in or in connection with the case ... makes a false oath or account." 11 U.S.C. § 727(a)(4)(A).

The bank contends that the boat and house transactions were not fully disclosed on the Crawfords' Statement of Affairs. The court below found that the boat transaction was disclosed that there was no need to disclose the house transaction because it occurred more than one year before the bankruptcy petition was filed.

Additionally, the bank contends that a promissory note given to the Crawford's by their son was an asset of the bankruptcy estate and was not listed as an asset of the estate. The note was signed in 1977 when the agreement was made to transfer the house to the son. The note provides that if the son, John Crawford, sold the house he would either pay his parents $26,500 *or* agree to take care of his mother if his father predeceased or divorced her.

This issue is not properly before the court. It was raised by the bank in its appellate brief, but it was not raised in the complaint in the Bankruptcy Court and therefore was not addressed in either the original or additional findings of Bankruptcy Court. *See Appellant's Excerpt of Record*, Exhibit 1 (the bank's complaint). Counsel for the bank did not raise this issue in is closing arguments to the Bankruptcy Court when he raised all the other issues in the case (*i.e.* the financial statement to the bank and the conveyance of the house and the boat.)

## CONCLUSION

The findings of fact of the Bankruptcy Court are not clearly erroneous. The judgment of the Bankruptcy Court granting discharge of debtors and discharging a debt is AFFIRMED.

The bank's arguments to this court involved a selective reading of the record. On all claims below, the bank had the burden of proving intent to deceive or defraud on the part of the Crawfords. The bank failed to carry that burden. It should be mentioned that some of the bank's arguments below were contradictory. The bank contended that the Crawfords did not own the Garden Grove house in 1980 because they had transferred it to their son in 1977. Yet the bank also argued that the transfer took place in 1982 and should have been disclosed on the Crawfords' Statement of Affairs to the Bankruptcy Court. The court below concluded that the Crawfords agreed to transfer the house to their son in 1977, the year they moved out and he moved in, as soon as he could afford to make payments on both the first and the second mortgage. In 1980 Mr. Crawford listed the house as an asset on his financial statement because the transfer to his son had not occurred. In mid–1981 the son started making payments on the second mortgage and the Crawfords delivered the deed to their son completing the transfer. In late 1982 the Crawfords filed for bankruptcy. This is not a case where the debtors, in contemplation of bankruptcy, transferred their house to their son. The decision to make the transfer was made five years before the bankruptcy petition was filed.

The transfer of the boat was made about six months before the bankruptcy petition, but the bank failed to prove that the transfer was made without fair consideration. The record below contains very little information about the value of the boat. The bank attempts to rely on the very financial statement it claims contains misrepresentations as proof of the value of the boat. Moreover, the financial statement was made nearly two years before the boat was transferred. The court below was not convinced by this meager evidence that in 1982 the Crawfords' equity in the boat was worth more than $1,500. It cannot be said that the court below was clearly erroneous on this point and in fact, based on the limited evidence provided on the issue, the determination that the bank failed to carry its burden was probably correct.

Finally, it should be noted that the Crawfords did not personally benefit from the $20,000 loan from the bank on which Mr. Crawford signed the guarantee. This factor may have convinced the court below that there was no fraudulent intent on the part of Mr. Crawford when he signed the statement regarding his financial condition in 1980.

The findings of fact below were not as detailed as they could have been and certain statements of the Bankruptcy Court, if taken out of context, are questionable. The court has carefully reviewed the entire record: the 58–page transcript of the trial below, both sets of findings of fact by the Bankruptcy Court, the bank's three-page complaint and the exhibits attached thereto, plaintiff's and defendants' trial exhibits, and the briefs of the parties. After this full review, the court is not left with the definite and firm conviction that a mistake has been made and therefore the decision of the Bankruptcy Court is AFFIRMED.