In the Matter of John Herman MANCINI and Elizabeth Capone Mancini, Debtor.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LARGO, Plaintiff,

v.

John Herman MANCINI, Defendant.

Bankruptcy No. 85–3830.
Adv. No. 86–105.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 27, 1987.

Charles M. Tatelbaum, Tampa, Fla., for plaintiff.

Harley E. Riedel, Tampa, Fla., for defendant.

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing upon the Motion to Dismiss Second Amended Complaint filed by John Herman Mancini (Mancini), the Defendant in the above-captioned adversary proceeding. The adversary proceeding was initiated by First Federal Savings and Loan Association of Largo (First Federal) who seeks a determination from this Court that a debt owed by Mancini is nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(B).

Upon the Debtors' filing of their Chapter 7 Petition, First Federal filed its Complaint, and the Defendants filed a Motion to Dismiss which was granted with prejudice as to Elizabeth Capone Mancini and without prejudice as to John Herman Mancini. An Amended Complaint was filed by First Federal and a Motion to Dismiss was granted again without prejudice. The Motion to Dismiss in question is addressed to the Second Amended Complaint.

The matter under consideration is a challenge to the legal sufficiency of the Second Amended Complaint filed by First Federal which, according to Mancini, is fatally defective and cannot be amended, and for this reason should be dismissed with prejudice. Mancini's contention is based on the following facts alleged in the Plaintiff's Complaint:

Mancini and his wife, Elizabeth Capone Mancini, executed a promissory note in favor of First Federal evidencing a loan made by First Federal to Mancini and his wife in the principal amount of $140,000.00; this indebtedness by the terms of the note was

payable upon demand. At the time the loan was made, the terms and conditions of the agreement were that Mancini and his wife would keep interest current; that the loan was to be reviewed on an annual basis by First Federal; that Mancini and his wife would submit a financial statement annually to be reviewed by First Federal. The terms of the agreement also provided that if at any time First Federal felt itself insecure with respect to repayment of the indebtedness or if Mancini or his wife defaulted on any of the terms and conditions of the loan agreement, First Federal could call the note and demand payment of the indebtedness. In October, 1985 Mancini submitted to First Federal a financial statement dated June 30, 1985. First Federal alleges that it relied on the truth and accuracy of the financial statement and continued and extended the loan rather than call the note and demand payment in full; that the financial statement was materially false; and that Mancini caused the financial statement to be made or published with the intent to deceive First Federal; therefore, the debt owed to First Federal should be declared to be nondischargeable pursuant to Sec. 523(a)(2)(B).

In his Motion to Dismiss Mancini contends that the Second Amended Complaint by First Federal fails to state a cause of action under 11 U.S.C. § 523(a)(2)(B) as it fails to allege and, as a matter of fact, cannot allege, that Mancini obtained an "extension, renewal or refinancing of credit," all of which are, in the alternative, indispensable elements of a viable claim of nondischargeability under § 523(a)(2)(B). This section in pertinent part provides as follows:

§ 523. Exceptions to Discharge

(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

It should be noted at the outset that it is now well established that F.R.C.P. 12(b)(6), as incorporated in Bankruptcy Rule 7012(b), which governs Motions to Dismiss, should be liberally construed and viewed "in the light most favorable to the Plaintiff." *In re Brandt-Airflex Corp.*, 69 B.R. 701 (Bankr.E.D.N.Y.1987), *quoting Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The corollary to this proposition is that a Motion to Dismiss for failure to state a claim should be granted only if there is no doubt that even if the Plaintiff is able to prove all material facts alleged in the Complaint in support of the claim, he still would not be entitled to the relief sought. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

It is without dispute that at the time the financial statement alleged to be false was submitted, Mancini did not obtain either "renewal or refinancing of credit." That leaves for consideration the question whether the Complaint alleges, or whether Freedom Federal can allege in light of the undisputed facts, that Mancini obtained an "extension of credit" within the meaning of 11 U.S.C. § 523(a)(2)(B). It is the contention of Mancini that the Complaint is fatally defective in that one could not have obtained an "extension of credit" simply because the obligation was represented by a demand note which had no fixed maturity date thus was not capable of being extended. Therefore, a mere forebearance to call a demand note is not tantamount or equivalent to an "extension of credit" as a matter of law.

In support of this proposition Mancini cites the case of *In re Colasante*, 12 B.R. 635 (Bankr.E.D.Pa.1981) where the District Court affirmed the Bankruptcy Court's holding that the forebearance by a creditor to call a demand note was not an extension

or renewal of credit within the meaning of § 17a(2) of the Bankruptcy Act of 1898, the predecessor Statute of the current § 523(a)(2)(B) of the Bankruptcy Code.

Even a cursory reading of *Colasante* indicates that it furnishes scant, if any, support for the proposition urged by Mancini. In *Colasante* the Court merely found, on the evidence, that the Plaintiff failed to establish with the requisite degree of proof that the Defendant's misrepresentation was made with the specific intent to deceive and with the purpose of causing the bank to forego liquidation of a valuable collateral. The Court further found that the total liabilities stated by the Defendant on the financial statement were not intended to play any part in the decision-making process of the bank; that the annual re-examination of the financial statements was performed only as a routine in-house procedure; and that the financial statement was not relied on by the bank as part of its decision to forebear from demanding immediate payment. The most important part of the holding is, however, that the court clearly stated that "it shall not be necessary for this court to decide whether a creditor's unsolicited forebearance in the collection of an outstanding debt is equivalent to an extension of credit." *Id.* at 636.

Unfortunately, the authority relied on by First Federal, *In re Tomei*, 24 B.R. 204 (Bankr.W.D.N.Y.1982), equally misses the point, and even a cursory reading of this case leaves no doubt that it furnishes no support for the proposition argued by First Federal. It is clear that the transactions in *Tomei, supra,* were renewals in a conventional sense and the promissory note was renewed by the lender at least three times. Moreover, *Tomei* did not involve a demand note to begin with, thus the question of whether or not a forebearance to call a demand note is an extension of credit was not even involved at all in *Tomei.*

In contrast to the minimal support provided by the above-cited cases, *In re Eaton*, 41 B.R. 800 (Bankr.E.D.Wis.1984), cited by both parties, is much closer to the issue involved in the present instance. This case fails to support the proposition urged by Mancini, but, on the contrary lends greater support to the position urged by First Federal. *Eaton*, like the case under consideration, involved a demand note which was secured by property valued at $42,000.00. Due to the Plaintiff's concern regarding the Debtor's ability to repay the loan, the Plaintiff requested additional security or an immediate payment of the loan. The Debtor agreed to pledge certain diamonds as additional security and, in fact, executed and signed a collateral pledge agreement. The Plaintiff, however, did not ask the Debtor whether or not he had the authority to pledge the diamonds, even though both the Plaintiff's representative and the Debtor previously discussed the fact that the diamonds had been given to the Debtor's wife and daughters as gifts by the Debtor.

When the loan became in default, the Debtor's wife requested the return of the diamonds which were, in fact, returned. This was followed by the controversy involved in *Eaton* regarding whether or not the Plaintiff's forebearance from calling the demand notes, caused by the Debtor's pledging of the diamonds was, in fact, an "extension" of credit within the meaning of 11 U.S.C. § 523(a)(2)(B). Although the Court ultimately held in favor of the Debtor on the grounds that the Plaintiff's reliance was not reasonable, the Court concluded that the option given to the Debtor by the Plaintiff was tantamount to a demand of payment, and therefore, the acceptance of the diamonds as additional security in exchange for the extension of the Debtor's loans was, in fact, an extension of credit.

Having considered the authorities cited, this Court is satisfied that the reasoning in *Eaton* is most persuasive, and the Complaint does, in fact, state a cause of action under § 523(a)(2)(B). This conclusion is based on the following:

In *Eaton* the decision of a lender not to call a demand note was based on the proposition that the lender as a condition not to call the note requested additional security. In the present instance, the decision of a lender not to call the note was based on the

proposition that it would receive a satisfactory financial statement, which in fact appeared to be facially satisfactory and sound. While it is true that in *Eaton* it was the additional security which affected the decision not to call the note and in the present instance the receipt of a satisfactory financial statement influenced First Federal's inaction, this is really a distinction without difference. In both instances the deciding factor not to call a demand note was the receipt of something on which the lender relied. In *Eaton*, there was reliance, albeit unreasonable, on the diamonds, and in the case at hand, First Federal allegedly relied on the financial statement submitted by the Debtor. For this reason it is clear that not to exercise a legal right when it could have been exercised and to permit the borrower to continue to enjoy credit is tantamount to an extension of credit which is clearly one of the elements of a claim of nondischargeability under § 523(a)(2)(B). This Court is satisfied that the Second Amended Complaint does state a cause of action for which relief can be granted, and for this reason the Motion to Dismiss is not well taken and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Defendant's Motion to Dismiss be, and the same is hereby, denied, and the Defendant shall have fifteen (15) days from the date of this Order to file his responsive pleading. It is further

ORDERED, ADJUDGED AND DECREED that in the event the responsive pleading is filed, the matter shall promptly be scheduled for a pre-trial conference. It is further

ORDERED, ADJUDGED AND DECREED that if the Defendant fails to file a responsive pleading within the time fixed herein, First Federal may proceed to conclude this matter by default.