In re Philip W. MANS

William and Norinne FIELD,
Plaintiffs/Appellees,

v.

Philip W. MANS, Defendant/Appellant.

BAP No. NH 96–085.

United States Bankruptcy Appellate Panel
of the First Circuit.

June 25, 1997.

W.E. Whittington IV, Brooks McNally Whittington Platto & Vitt, P.C., Norwich, VT, were on brief for defendant/appellant.

Christopher J. Seufert and Seufert Professional Association, Franklin, NH, were on brief for appellees.

Before QUEENAN, FEENEY and BOROFF, Bankruptcy Judges.

QUEENAN, Bankruptcy Judge.

Having already made its mark on the fraud exception to a debt's discharge in bankruptcy, this case bids fair to do so again. In a prior appeal by the present appellees, William and Norinne Field (the "Fields"), the Supreme Court ruled in their favor. It held the degree of reliance required under section 523(a)(2)(A) of the Bankruptcy Code is merely justifiable reliance, the predominant standard at common law, rather than the more exacting standard of reasonable reliance imposed by the lower courts in dismissing the Fields' fraud claim. *Field v. Mans,* — U.S. —, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Upon remand, the initial trial judge recused himself. Another judge made new findings, ruled the Fields had justifiably relied upon the misrepresentation of Philip W. Mans (the "Debtor") and entered judgment declaring the Fields' debt nondischargeable by reason of the fraud. With the consent of the parties, the second judge made findings based solely on the transcript of the trial. The Debtor's present appeal followed.

We leave undisturbed the court's ruling of justifiable reliance. But we reverse its judgment because the Debtor's fraud was unrelated to an "extension ... of credit" within the meaning of section 523(a)(2)(A). This is an issue the Supreme Court declined to pass on.

The undisputed evidence and the findings of the second judge, who will be referred to simply as the "trial judge," disclose the following. In June of 1987, the Fields sold property on Mascoma Lake, located in Enfield, New Hampshire and known as Mascoma Lake Lodge, to the Debtor's corporation,

Sequoia Security Investment Corp. ("Sequoia"). The price was $462,500, of which $275,000 was paid in cash from the proceeds of a first mortgage placed on the property. The balance of the purchase price was represented by Sequoia's $187,500 note payable in equal monthly installments of principal and interest over ten years. The note was guaranteed by the Debtor and secured by a mortgage on the property. The mortgage provided that if the property was transferred without the Fields' prior consent the note's entire balance would become immediately payable at the option of the Fields.

On October 8, 1987, the Debtor executed a deed on behalf of Sequoia transferring the property to Crescent Beach Development, a partnership he had formed with DeFelice and Sons, Inc. The next day, the Debtor's lawyer sent a letter to the Fields' attorney stating the Debtor had formed Crescent Beach Development with a "substantial investor." He said he did not wish to trigger the "due on sale" mortgage clause, and requested that the Fields consent to the property being transferred to the partnership. The letter also stated: "We could avoid the issue entirely by simply putting the stock of [another of the Debtor's corporations] into the partnership instead of conveying title to the underlying real property, but for a variety of reasons it is preferable to convey the property." The letter did not mention that the deed had already been signed.

On October 19, 1987, the Fields' attorney responded by letter. He offered to consent to the transfer in return for a one-time fee of $10,000, plus attorney fees, lost interest totaling $500 and payment of future monthly payments by direct bank transfer. The deed signed on October 8th was recorded the same day this letter was sent, October 19th. The Debtor's attorney replied on October 27th, stating the $10,000 fee was "out of the question." There was no further correspondence concerning the transfer. Monthly payments on the note continued.

Sometime in 1988, the Fields learned from a third party that a Mr. DeFelice was on the property and had stated that he was the owner. The Fields did not examine the registry of deeds to see whether a transfer had taken place. William Field had occasion to speak to the Debtor more than once after he heard about DeFelice. In these conversations, the Debtor brought him up to date on the property's development. The Fields never asked the Debtor about DeFelice, and the Debtor never told them of the transfer.

The trial judge found that the Debtor, through the correspondence, had impliedly represented that no transfer of the real estate had occurred. The trial judge concluded that the Fields had justifiably relied upon the misrepresentation and hence had proven their case under section 523(a)(2)(A).[1]

## I. JUSTIFIABLE RELIANCE

The Debtor attacks the trial judge's determination of justifiable reliance.[2] Rather than being a finding of fact, the Debtor says, it was a conclusion of law fully reviewable by this court.

■■■ A plaintiff's reliance on a misrepresentation is justifiable so long as the falsity of the representation is not obvious to someone of the plaintiff's knowledge and intelligence, even though an investigation would have disclosed the falsehood. *Field,* —— U.S. at ——, 116 S.Ct. at 444. This differs from the standard of reasonable reliance, which requires the plaintiff's conduct to conform to that of a reasonable person. *Id.* Justifiable reliance is a standard kinder to the naive. It looks to the characteristics of the particular plaintiff rather than a community standard. Id. Although it places no initial duty on the plaintiff to investigate so as to discover a falsehood not apparent to him, the plaintiff bears that obligation once he discovers something that should warn him he has been deceived. *Id.*

---

1. The original complaint contained a count under section 523(a)(6) which the Fields waived prior to trial.

2. Apparently conceding that the issues are foreclosed by the prior proceedings in this case, the

Debtor makes no assertion as to the absence of the other elements of fraud under section 523(a)(2)(A), namely a false representation, intention to deceive and resulting damage.

The trial judge did not believe the Fields received such a warning when they learned from a third party that DeFelice was on the property claiming to be the owner. He rejected the Debtor's contention that this information required the Fields to check the records at the registry of deeds or to at least ask the Debtor whether the property had been transferred. He then stated:

> Debtor's representation in the October 9, 1987 letter, which specifically stated that Debtor wished to avoid the due on sale clause and could accomplish his goals without a transfer of the property, coupled with the fact that payments under the note were kept current for more than three years after the transfer, satisfy this Court that the facts support [the Fields'] representations that they had no reason to believe and did not believe that Debtor had in fact transferred the property. This Court finds that [the Fields] justifiably relied on Debtor's representations and no further investigation by them was warranted or required.

██ Under the familiar mandate of Rule 52(a), findings of fact "shall not be set aside unless clearly erroneous.... "[3] This means a reviewing court "ought not to upset findings of fact or conclusions therefrom unless, on the whole of the record, [the appellate judges] form a strong, unyielding belief that a mistake has been made." *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir.1990). A trial judge's findings are entitled to this deference even when, as here, they are based upon a transcript of evidence which is equally available to the reviewing court. *Boroff v. Tully (In re Tul-*

*ly)*, 818 F.2d 106, 108–09 (1st Cir.1987).[4] Rule 52(a) applies to general as well as specific findings. It "does not divide findings of fact into those that deal with 'ultimate' and those that deal with 'subsidiary' facts." *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

All this is perhaps basic. What is not so apparent is the nature of the trial judge's determination of justifiable reliance. Is it a finding of an ultimate fact to be set aside only if clearly erroneous, or is it a conclusion of law fully reviewable by this court?

Guidance is provided in this circuit by *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060 (1st Cir.1995). The court there reviewed the district court's determination of whether certain newspaper employees were "professional employees" exempt from the overtime and record keeping provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq. Reich*, 44 F.3d at 1060. It viewed the question as one of mixed fact and law involving a three-step process: (i) findings of historical fact regarding the day-to-day duties of the employees, (ii) application of the regulations of the United States Secretary of Labor, which involves inferences from the historical facts, for example, whether an employee's work requires "invention, imagination, or talent" and whether such work constitutes the employee's "primary duty," and (iii) the ultimate conclusion on whether a particular employee is a "professional employee" within the meaning of the statute. *Id.* at 1073. As the court saw it, the first two inquiries constitute findings of fact entitled to the protection of the clearly

---

**3.** Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, which adopts Rule 52(a) of the Federal Rules of Civil Procedure, reads in pertinent part as follows:

> (a) **Effect.** In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set

aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. ...

...

FED R. BANKR. P. § 7052(a).

**4.** In *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), cited in *Tully*, the Supreme Court resolved a split among the circuits concerning the application of the clearly erroneous standard to documentary evidence. Shortly after *Anderson* was decided, Rule 52(a) was amended to apply the standard to findings of fact "whether based on oral or documentary evidence...."

erroneous standard; the third is purely a legal conclusion, fully reviewable.[5] *Id.*

■ A similar approach is appropriate here. The trial judge's determination of justifiable reliance was a conclusion of law to the degree it applied the legal standard of justifiable reliance, which looks to the individual knowledge and intelligence of the deceived party and requires an investigation for falsity only when he receives a warning that should indicate to him he has been deceived. It is a *finding of fact* to the extent it determined the plaintiff's knowledge and intelligence and whether the information which he received was a warning of deception to one of that knowledge and intelligence.

■ The trial judge concentrated his findings upon whether a warning of deception had been received. He found the Fields received no such warning for two reasons: (i) the Debtor's ability to bring in an investor by transferring stock rather than real estate to the newly-formed partnership, and (ii) the continuation of monthly payments on the note for over three years after the transfer. The first reason was apparently particularly persuasive to him. The letter from the Debtor's lawyer expressly referred to the possibility of a stock transfer. And there was uncontradicted testimony from William Field tending to show he thought a stock transfer may have taken place and that his conversations with the Debtor gave him no cause to think otherwise. The trial judge found that the Fields "had no reason to believe and did not believe that Debtor had in fact transferred the property." One could argue that the presence of an individual on the property claiming to be its owner was a warning that should have sent the Fields, at the very least, to the Debtor's door with direct questions. However, the sufficiency of the warning is a question of fact. When the DeFelice claim of ownership is viewed in conjunction with the possibility of a stock transfer, we cannot say that the trial judge was clearly erroneous in his determination that no adequate warning had been received. Therefore, we must leave the trial judge's conclusion of justifiable reliance undisturbed.

## II. THE FIELDS' FAILURE TO ACCELERATE THE DEBT AS AN "EXTENSION ... OF CREDIT" UNDER SECTION 523(a)(2)(A)

There is, however, a more basic question. It concerns the reach of the statute. Section 523(a)(2)(A) bars the discharge of "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation or actual fraud...."[6] When the Fields failed to exercise their option to accelerate so as to make the entire debt balance immediately due and payable, which they were entitled to do, did they thereby grant an "extension ... of credit" within the meaning of the statute?

The Fields contend their failure to accelerate is the equivalent of an extension. It is certainly not the literal equivalent. An "extension" is an "increase in the length of time (e.g. of expiration date of lease, or due date of note)," Black's Law Dictionary 523 (5th ed.1979), and a "stretching out or stretching forth," Webster's Third New International Dictionary 805. Without a declaration of acceleration by the Fields, the note at all times remained payable in monthly install-

---

5. Perhaps not all mixed questions of law and fact can be so neatly divided as was done in *Reich*. If that is the case, the First Circuit permits another approach. "The standard of review applicable to mixed questions [of law and fact] usually depends upon where they fall along the degree-of-deference continuum: the more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous." *In re Extradition of Howard*, 996 F.2d 1320, 1328 (1st Cir.1993). Courts are divided on the deference to be given a trial judge's answer to a mixed question of law and fact. *See, Pullman–Standard*, 456 U.S. at 289 n. 19, 102 S.Ct. at 1790 n. 19.

6. Section 523(a)(2)(A) provides in full as follows:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
   11 U.S.C. § 523(a)(2)(A) (1994).

ments through June 23, 1997, ten years from its date of execution. Its payment dates were never postponed.

A literal approach to interpretation of a statute is generally preferred, and indeed, the First Circuit has taken such an approach to this very statute. *Shawmut Bank, N.A. v. Goodrich (In re Goodrich )*, 999 F.2d 22 (1st Cir.1993), was a case under section 523(a)(2)(B) concerning a false financial statement and involved interpretation of the term "renewal" in the preamble to subsections (A) and (B). The question before the court was whether a false financial statement inducing the renewal of a line of credit was sufficient to cause the entire debt to be non-dischargeable or only the additional credit granted after the renewal. The court refused to read into the statute a requirement that the creditor show it was damaged by the fraud, recognizing that some courts had done so. *Id.* at 25. The court regarded this requirement as a policy choice which Congress could have made but gave no indication of having done so.[7] *Id.* The same can be said here of Congress' omission of any reference in the statute to a failure to accelerate.

Nor is failure to accelerate the practical equivalent of an extension. Not being aware of their right to accelerate, the Fields could not and did not make a conscious decision not to accelerate. Moreover, for such equivalence to exist, there would have to be virtual certainty that acceleration would have taken place had the creditor known of the default. Although that certainty may exist in some cases, there are many others where it does not. It may not have existed here. Neither of the two judges below made a finding that the Fields would have accelerated the debt if they knew the property had been transferred. To the contrary, the first trial judge apparently thought otherwise. He spoke at length about the Fields' hindsight on whether they would have triggered the due-on-sale clause.

In sum, treating a failure to accelerate as an "extension" distorts the common meaning of this statutory term and presumes a causal connection which may not be present. An exception to discharge should ordinarily be construed in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Tully*, 818 F.2d at 110; *Driggs v. Black (In re Black )*, 787 F.2d 503, 505 (10th Cir.1986); *Barclays Am./Business Credit, Inc. v. Long (In re Long )*, 774 F.2d 875, 879 (8th Cir. 1985).

Despite the statute's literal meaning and this rule of construction, many of the decisions, with little analysis, regard a failure to accelerate the maturity date of a term note, or the failure to make demand for payment under a demand note, to be an "extension" of credit previously granted. *See Marine Bank Southwest N.A. v. Hoffman (In re Hoffman )*, 80 B.R. 924, 926–27 (Bankr.N.D.Ill. 1988) (failure to accelerate deemed extension); *First Federal Savings & Loan Ass'n v. Mancini (In re Mancini )*, 77 B.R. 913, 916 (Bankr.M.D.Fla.1987) (failure to make demand under demand note "tantamount" to extension); *Takeuchi Mfg. (U.S.), Ltd. v. Fields (In re Fields)*, 44 B.R. 322, 327 (Bankr.S.D.Fla.1984) (failure to accelerate "tantamount" to extension); *First Bank (N.A.) v. Eaton (In re Eaton )*, 41 B.R. 800, 802–03 (Bankr.E.D.Wis.1984) (failure to make demand under demand note "tantamount" to extension). For the reasons stated, we agree with decisions taking the opposite view. *See, e.g., Bombardier Capital, Inc. v. Baietti (In re Baietti )*, 189 B.R. 549, 556–57 (Bankr.D.Me.1995) (declining to treat as an extension either failure to accelerate or forbearance of collection efforts on debt already due).[8]

## III. DEBTOR'S ABILITY TO RAISE "EXTENSION" ISSUE

The Fields contend the doctrine of law of the case forecloses the Debtor from

---

7. Unlike the situation in Goodrich, where there was relevant legislative history (which the court described as "tangled"), there is no legislative history relevant to the present "extension" issue.

8. A creditor's decision to forbear collection efforts on a debt presently due has also produced a division in the case law. *Compare, e.g., Drinker Biddle & Reath v. Bacher (In re Bacher )*, 47 B.R. 825, 829 (Bankr.E.D.Pa.1985) (forbearance not extension), *with Chapman v. Frakes*, 1991 WL 247602 (N.D.Ill.) (forbearance akin to extension). That question is not before us.

raising the extension issue. This is so, they say, because the first trial judge ruled against the Debtor on the issue, and this ruling was not disturbed on appeal. The second trial judge agreed with this argument. We do not.

Under the doctrine of law of the case, a court will generally not revisit an issue previously decided in the same case. *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979); *Mendenhall v. Barber-Greene Co.,* 26 F.3d 1573, 1582–83 (Fed.Cir.1994). For example, if a party fails to appeal or cross-appeal an adverse judgment or an adverse portion of a judgment, or does so unsuccessfully, he may not contest a ruling behind the judgment during a later remand proceeding in the same case. *See, e.g., Richardson v. Communications Workers of Amer., AFL–CIO,* 486 F.2d 801, 804–05 (8th Cir.1973) (failure to argue issue on cross-appeal); *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 461 F.Supp. 1046 (N.D.Cal.1978) (failure to file cross-appeal).

At the close of trial, the first trial judge rendered his findings of fact and conclusions of law in open court. During the course of doing so, he stated "in effect [the Fields] extended credit to [the Debtor] for another two years, whereby—whereas they could have called the due on sale clause as of October 1987...." We assume this was a ruling on the extension issue, although that is not clear because the judge made the statement in the course of a discussion of the reliance question.

The difficulty with application here of the doctrine of law of the case is that the Debtor had nothing to appeal as a result of the initial trial. He had won. Judgment entered wholly in his favor. An appeal is taken from a court's judgment, order or decree, not from a ruling of law. 28 U.S.C. § 158 (1994); Fed. R. Bankr.P. 8001.

Moreover, the Debtor argued the extension issue at the earliest possible time during the appellate process. Until the Supreme Court granted certiorari, the arguments of the parties were devoted to questions of actual and reasonable reliance. *See Field,* —

U.S. at — – —, 116 S.Ct. at 448–49 (Breyer, J., dissenting). When the Fields challenged the standard of reasonable reliance before the Supreme Court, the Debtor raised the extension issue. *Field,* — U.S. at —, 116 S.Ct. at 448 (Ginsburg, J., concurring). The Court declined to pass on the issue, stating it was "not fairly subsumed within the question on which we granted certiorari...." *Field,* — U.S. at — n. 2, 116 S.Ct. at 440 n. 2. Justice Ginsburg wrote a concurring opinion for the sole purpose of emphasizing that the issue remained open, phrasing it in terms of whether the debt was "obtained by" the Debtor's fraud. *Field,* — U.S. at — – —, 116 S.Ct. at 447–48 (Ginsburg, J., concurring).

The adjudication of this issue is not prohibited by the Supreme Court's order of remand. The Court stated: "[W]e vacate the judgment and remand the case for proceedings consistent with this opinion" (footnote omitted). *Field,* — U.S. at —, 116 S.Ct. at 447. Such a remand order does not foreclose further adjudication so long as the later adjudication is consistent with the opinion. *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979). There is no inconsistency here.

We therefore reverse the decision of the Bankruptcy Court and dismiss the Fields' complaint, with prejudice.