KENNEDY, Circuit Judge,
concurring in part and dissenting in part.
The Bankruptcy Court found
that the parties did not enter an agreement constituting the “refinancing of credit” on April 13, 1996 because there was no agreement reached on terms of payment, including the interest rate, and both Plaintiff and his attorney acknowledge that any refinancing agreement would be contingent upon a July payment being made by the Defendant.
(J.A. at 7).
The bankruptcy judge then found that the plaintiffs’ April 13, 1996 to July 1996 forbearance from collection efforts, after receipt of the March 29, 1993 financial statements, constituted an “extension of credit.”
Instead, the Plaintiffs forbore from any collection efforts until at least July 1, 1993, leaving open the issue of whether the Plaintiffs’ forbearance from any collection efforts, after their receipt of the March 29, 1993 financial statements, constituted an “extension of credit.”
(J.A. at 7)
Later on in its opinion, the bankruptcy judge makes the finding that
the parties had an agreement which was supported by consideration in the form of mutual promises: the Defendant agreed to pay the Plaintiffs in exchange for the Plaintiffs’ agreement to accept monthly payments in place of annual principal payments and quarterly interest payments and to waive the default and not pursue legal remedies.
J.A. at 11.
This holding appears to be in direct conflict with the earlier finding that the parties did not reach an agreement because there was “no agreement reached on terms of payment including the interest rate” and that any agreement was contingent on defendant paying the $50,000 July payment, a holding supported by the record.
The panel apparently concludes that there was an oral contract to forbear, or an oral contract of some kind, enforceable against the Wolfs under a theory of promissory es-toppel. It is unclear whether it finds a separate contract dealing only with forbearance to July 1 or that plaintiffs would be estopped from accelerating the debt and required to restructure it in accordance with the discussions of April 13 if Campbell made the $50,-000 interest payment due July 1. Collateral estoppel is available in Michigan, however, only where the terms of the promise are *1049 clear and definite. “[T]he sine qua non of the theory of promissory estoppel is that the promise be clear and definite ...” State Bank of Standish v. Curry, 442 Mich. 76, 500 N.W.2d 104, 107 (Mich.1993). Here, neither the interest rate nor the term of any extension of the loan had been agreed upon, only the concept of monthly payments was agreed to. In concluding that promissory estoppel could be found in Curry, the Michigan Supreme Court went on to say that while parties may
have left open some matters to be determined in the future, enforcement is not precluded if there exists a method of determining the terms of the contract either by examining the agreement itself or other usage or custom that is independent of a party’s mere “wish, will and desire.” An enforceable agreement may be found “even though the termination is left to one of the contracting parties [as long as] he is required to make it ‘in good faith’ in accordance with [an] existing standard or with facts capable of objective proof.” 1 Cor-bin, Contracts, § 95, p. 402. The scope of an oral promise may also be identified by referring to the facts surrounding the loan where there exists a previous course of dealing between the parties, thereby supplying some objective method by which the missing terms could be supplied.
Id. at 110.
None of these methods is available here. The original loan was a three-year balloon loan. The defendant had suggested a five-year term and a fifteen-year amortization. Plaintiff had agreed only to monthly payments and some undefined extension. Nor is there any testimony about any separate agreement to forbear. At the April 13 meeting, plaintiffs accepted two post-dated checks totaling $50,000 (interest payment) which were honored and postponed reaching any final terms until Campbell paid the July 1st interest. The record is devoid of evidence that there was any agreement reached.
If I were able to agree with the panel that the parties agreed to new terms on the underlying debt, i.e., that there was a renewal of the underlying debt, then I agree with the panel that such a renewed debt is nondis-ehargeable in its entirety. The debt sought to be collected in the bankruptcy proceeding would then be the renewed debt and would have been obtained by fraud. However, in the absence of an agreement restructuring or renewing the debt, we have only the original debt and any debt that may have been created by forbearance. The panel declines to decide whether forbearance alone, induced by fraud without an enforceable agreement to forbear, constitutes an “extension of credit” under § 523(a) since it apparently concluded that the courts below found here a promise to forbear in exchange for some new promises given by Campbell.
While I agree that forbearance can be an extension of credit, it seems to me that the only debt that results from forbearance which can be described as an extension of credit is the debt for interest for the period of forbearance. That debt, I agree, should not be discharged to the extent it was obtained by fraud. Here, however, the obligation to pay interest on July 1 was not modified in any way. There was no extension of credit given with respect to interest and the only debt is the underlying debt which was not obtained by fraud.
What other credit did Wolf extend? He did not extend the note, nor did he extend the time to pay the interest. Rather, the fraud induced Wolf to delay his collection efforts until July 1.
A number of bankruptcy courts have held that forbearance alone is not an extension of credit. See Howard & Sons, Inc. v. Schmidt (In re Schmidt), 70 B.R. 634, 644 (Bankr. N.D.Ind.1986); Drinker, Biddle & Reath v. Bacher (In re Bacher), 47 B.R. 825, 829 (Bankr.E.D.Pa.1985); Cement Nat’l Bank (In re Colasante), 12 B.R. 635, 638 (E.D.Pa. 1981).
There are also several bankruptcy court cases which are cited as being to the contrary. See In re Plechaty, 213 B.R. 119, 120 (1997); First Commercial Bank v. Robinson (In re Robinson), 192 B.R. 569, 575-76 (Bankr.N.D.Ala., 1996); FDIC v. Cerar (In re Cerar), 84 B.R. 524, 529 (Bankr.C.D.Ill. 1988); First Bank v. Eaton (In re Eaton), 41 B.R. 800, 803 (Bankr.E.D.Wis.1984) (all *1050 stating that delay of collection constitutes an extension of credit within the meaning of § 523(a)(2)).
A careful examination of those cases indicate that they do not involve mere forbearance but a renewal of credit. In First Commercial Bank v. Robinson, 192 B.R. 569 (Bankr.N.D.Ala.1996), the court found a renewal of credit.
Section 523(a)(2)(B) is explicit that a debt may be nondischargeable if it is, among other things, a renewal of an extension of credit. The August 6, 1992, transaction was a renewal of credit within the meaning of § 523(a)(2)(B).
Id. at 575. In FDIC v. Cerar, 84 B.R. 524 (Bankr.C.D.Ill.1988),a forged note was substituted for the original note. Credit was extended on the forged note. In First Bank v. Eaton, 41 B.R. 800 (Bankr.E.D.Wis.1984), the creditor was given the option of paying his demand note or providing additional security. The court found that acceptance of diamonds as additional security was an extension or enlargement of credit. The debt that could not be discharged, according to the bankruptcy court, was limited to the value of the diamonds. The extension of credit, then, was their value. It found, however, that the creditor’s reliance on the debt- or’s ownership of the diamonds was not reasonable and so permitted discharge of the underlying debt.
John Deere Co. v. Gerlach, 897 F.2d 1048 (10th Cir.1990) also involved more than mere forbearance. Defendant was the father of the owner of a Deere franchise. His son would get persons to sign franchise contracts which would be submitted to Deere which would give the dealership credit for its outstanding indebtedness for the amount of the contract. The contract would later be canceled but the dealership would have the benefit of the credit in the interim. Defendant signed one of these contracts for his father. The court found this was an extension of credit and that the defendant was liable for the amount of the contract. It also found that Deere was damaged due to the fraud and that the father’s fraud enabled the franchise to get credit for the ensuing month. If it had not had credit, it would have had to pay cash for parts and equipment delivered during the ensuing month. The father was unable to discharge the debt represented by the contract on which Deere had advance money and Deere’s damages for extending credit for the next month. There was no issue in Gerlach as to whether there had been an extension of credit to the son’s dealership by reason of the false contract. The dealership clearly received credit on its indebtedness to Deere in the amount of the fraudulent contract signed by defendant. The damages for the following month were awarded under Colorado law.
[I]t [bankruptcy court] also should treat new unsecured credit John Deere extended to the dealership in the month following submission of defendant’s fraudulent contract as debt “obtained by” defendant’s fraud.
Deere, 897 F.2d at 1052.
The instant case is also distinguishable from In re Goodrich, 999 F.2d 22 (1st Cir. 1993) and Matter of McFarland, 84 F.3d 943 (7th Cir.1996) in that in each of those cases there was a refinancing of credit, something that did not occur here. Refinancing, to the extent induced by fraud, is explicitly listed as requiring denial of discharge.
Because I would hold that mere forbearance is not an extension of credit and can find neither restructuring of the debt nor renewal of the debt or refinancing of credit, I believe the original debt, which was not obtained by fraud, may be discharged.