In re Anthony D. COLASANTE, M.D. and Jean S. COLASANTE, D.D.S., his wife, individually and jointly, Bankrupts.

CEMENT NATIONAL BANK,
Plaintiff-Appellant,

v.

Anthony D. COLASANTE and Jean S. Colasante, Defendant-Appellees.

Bankruptcy Nos. 73–285 to 73–287.

United States District Court,
E. D. Pennsylvania.

June 26, 1981.

Irving W. Coleman, Allentown, Pa., for plaintiff-appellant.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for defendant-appellees.

## MEMORANDUM

GILES, District Judge.

### Introduction

This action is an appeal by creditor, Cement National Bank, from an Order of Bankruptcy Judge Twardowski dated May 23, 1980, discharging the debts of Anthony Colasante, M.D., and Jean S. Colasante, D.D.S., husband and wife, jointly and severally.

The Bank's principal contention is that the record evidence demonstrates that the debtors, to whom the Bank had made loans payable on demand, intentionally failed to disclose the full extent of their indebtedness to other banks, when asked to do so through a financial statement. According to the Bank, the consequence of this failure was that it caused the Bank to rely upon the debtors' false net worth statement and to forego demanding immediate payment. The Bank argues that its forbearance consisted of an extension of credit in reliance upon deceptive statements intentionally made by debtors, such that under Section 17(a)(2) of the former Bankruptcy Act, 11 U.S.C. § 35(a)(2), the attempted discharge of debts should be defeated as a matter of law. Section 17(a)(2) reads in pertinent part,

A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . are liabilities for obtaining money or property by false representations, or for obtaining . . . an extension of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . .

Debtors respond, essentially as Bankruptcy Judge Twardowski found, that the Bank has failed to show that it relied upon the materially false financial statement and, in any event, the Bank's subsequent decision not to call the overdue notes was not an extension of credit within the meaning of the Act.

For the reasons stated below, I agree that the record shows that the Bank failed to carry its burden of demonstrating reliance by clear and convincing evidence. The discharge order must be affirmed. Therefore, it shall not be necessary for this court to decide whether a creditor's unsolicited forbearance in the collection of an outstanding debt is equivalent to an extension of credit.

### Standard of Review

■ The Bank's objections to the debtors' bankruptcy petition were heard, and a full record was made, before Bankruptcy Judge Hiller. However, he retired before ruling on the matter. Bankruptcy Judge Twardowski then succeeded to his position and decided the case based on the record. Both parties agree that a *de novo* hearing is neither appropriate nor available. They also agree that, as the reviewing court, I cannot or should not accord the factual findings of Judge Twardowski the deference normally accorded bankruptcy rulings under the "clearly erroneous" review stan-

dard because he had no opportunity to assess the credibility of the witnesses. *See* Bankruptcy Rule 810; *In re Steiker,* 380 F.2d 765 (3d Cir. 1967); *In re Kaufhold,* 256 F.2d 181 (3d Cir. 1958). There are cases from other jurisdictions suggesting that the "clearly erroneous" rule is inapplicable where the bankruptcy judge who heard the testimony does not decide the case. *Clemens v. Clemens (In re Clemens),* 472 F.2d 939 (6th Cir. 1972); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son,* 467 F.Supp. 830 (E.D.Mich.1979). I agree that here I am not bound by the "clearly erroneous" rule of review. The deciding bankruptcy judge had no basis for his decision other than that which this court presently possesses.

Based upon an independent review of the record, I have determined that Bankruptcy Judge Twardowski's Findings of Fact are supported by the record using the "fair preponderance of the evidence" standard. He found, and this court adopts, the following as facts:

1. On April 30, 1973 Anthony D. Colasante, M.D., and Jean S. Colasante, D.D.S., husband and wife, filed voluntary petitions in bankruptcy.

2. The plaintiff, Cement National Bank, a creditor of the bankrupts, is seeking a determination that the debt owed it by the bankrupts and scheduled by them is nondischargeable.

3. The debt owed plaintiff consists of three demand notes, two of which were signed by and under the name of Anthony D. Colasante only, and one note signed by and under the name of Anthony D. Colasante and purporting to bear the signature of Jean S. Colasante as well.

4. Exhibit 5, the note purporting to bear the signature of Jean S. Colasante, was in fact signed under Jean S. Colasante's name by Anthony D. Colasante with the authorization and knowledge of Jean S. Colasante. Notes of Testimony at 84–86, 116–21, 127–28. [Hereinafter cited as N.T.].

5. The amount of the debt due plaintiff at the time of the filing of the bankruptcy petition was $183,504.07.

6. On January 23, 1970 Anthony Colasante met with Mr. Fred Hoover, a vice president of Cement National Bank, who was also in charge of the loan department. On that date Colasante submitted to Hoover a two-page document entitled "Real Estate Holdings of Anthony D. Colasante, M.D. as of January 23, 1970." (Exhibit 2.) In addition, Colasante signed a financial statement, which was filled out by Hoover. (Exhibit 1), with information provided verbally at that time by Colasante or with the help of documents used in plaintiff's previous dealings with Colasante. N.T. at 76–78, 166, 170–74.

7. The only signature appearing on the financial statement is that of Anthony D. Colasante and nowhere on said document does the name or signature of Jean S. Colasante appear. It is this financial statement (Exhibit 1) which is the subject of plaintiff's allegation under § 17a(2) of the Bankruptcy Act that plaintiff submitted "a materially false statement in writing respecting his financial condition" to obtain "an extension or renewal of credit."

8. It is undisputed that at the time of the submission of the financial statement, January 23, 1970, Anthony Colasante was indebted to a number of banks, exclusive of plaintiff, on notes amounting to in excess of $700,000. N.T. at 140–45. However, on the financial statement submitted by Anthony Colasante, "notes payable to banks" is listed in the amount of $262,000. We find that Anthony Colasante then knew that the latter figure was substantially untrue. N.T. at 153–54.

9. On January 23, 1970, and at no time thereafter, did the Colasantes enter into new written or verbal agreements with plaintiff either advancing new money or refinancing any debt outstanding as of January 23, 1970. N.T. at 108.

■ Bankruptcy Judge Twardowski made the following relevant conclusions of law:

1. In order to succeed on a § 17a(2) objection, the plaintiff must prove (1) that the bankrupt made the representations; (2) that the representations, when made, were materially false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the damage alleged as the proximate result of the representations having been made. *HCC Consumer Discount Co. v. Tomeo (In re Tomea)*, 1 B.R. 673, 675, 677–78 (E.D.Pa.1979). *Cf. In re McMillan*, 579 F.2d 289, 292 n.5 (3d Cir. 1978); *Houtman v. Mann (In re Houtman)*, 568 F.2d 651, 655 (9th Cir. 1978); *Public Finance Corp. v. Taylor (In re Taylor)*, 514 F.2d 1370, 1373 (9th Cir. 1975); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).

2. The forbearance by a creditor to call demand notes is not "an extension or renewal of credit" within the meaning of § 17(a) of the Bankruptcy Act. Since no agreement, written or oral, was entered into between the plaintiff and Anthony Colasante or Jean Colasante, either for the advance of new money or refinancing or restructuring of the Colasantes' indebtedness, at or after the time of the submission of the January 23, 1970, financial statement, we conclude that no "extension or renewal credit" occurred; therefore, the acts complained of do not fall within the ambit of § 17a(2) of the Bankruptcy Act. N.T. at 108.

3. Even if forbearance by a creditor were deemed to constitute either "an extension or renewal of credit" within the meaning of § 17a(2) of the Bankruptcy Act, we conclude that plaintiff has failed to present any evidence, and therefore has failed to carry its burden of persuasion on all elements, with respect to the involvement of Jean S. Colasante in the submission of the financial statement of January 23, 1970. To the extent plaintiff has shown—or defendants have admitted—that Anthony Colasante often acted on behalf of Jean Colasante in some business matters (N.T. at 116–28), no reasonable inference can be drawn from the facts presented which would show that Anthony Colasante either acted or was asked by anyone to act on behalf of Jean Colasante in submitting said financial statement.

4. With respect to Anthony Colasante, we conclude that the plaintiff has proven by clear and convincing evidence that Anthony Colasante submitted a materially false, *i. e.*, substantially untrue, statement in writing respecting his financial condition as set forth in finding of fact number 8. N.T. at 28–30. *HCC Consumer Discount Co.*, 1 B.R. at 676–77.

5. We further conclude that plaintiff has failed to prove by clear and convincing evidence that Anthony Colasante made the representations contained in the financial statement with the intention and purpose of deceiving the plaintiff. We find credible Colasante's testimony that his meeting with Hoover lasted only about 15–20 minutes, during which time Hoover and Colasante completed the financial statement with a view more toward having something "for the record" rather than with a view toward accuracy. N.T. at 76–78, 166, 170–74.

6. We conclude that the purpose for requesting a financial statement from Anthony Colasante was to satisfy bank auditors or examiners. N.T. at 75, 150–54, 157–59, 161–62. Therefore, plaintiff has failed to carry its burden of persuasion in showing that it relied, partially or otherwise, on Colasante's financial statement, whether in acting or in failing to act. We further conclude that plaintiff's reliance, if any, on representations of the bankrupt occurred with respect to the purported value of Anthony Colasante's real estate and stock holdings, representations which have not been proven to be substantially untrue or made with any intent to deceive. N.T. at 102–08. Finally, even if it could be said that plaintiff relied on Colasante's financial statement in its "forbearance," any such reliance was unreasonable, especially in view of the fact that in the place on the statement marked "notes payable to banks,"

the amount reflected ($262,000) was less than the amount then due plaintiff alone. N.T. at 90–91.

7. We further conclude that plaintiff has failed to show that any damage it may have suffered was proximately caused by the submission by Colasante of a false financial statement and any reliance thereon. Any "damage" suffered by plaintiff by reason of its "forbearance" resulted from a decline in the value of Colasante's stock and real estate holdings, an eventuality not uncommon in financial transactions.

8. Therefore, the scheduled indebtedness to Cement National Bank shall be discharged as to Anthony D. Colasante, M.D. and Jean S. Colasante, D.D.S., individually and jointly.

## DISCUSSION

The parties agreed at the oral argument that the party objecting to the discharge of debts has the burden of proving facts essential to the objection. Rules of Bankruptcy Proc., Rule 407; *In re Decker*, 595 F.2d 185 (3d Cir. 1979).

Section 17(a)(2) requires the objecting creditor to prove: (1) that the bankrupt made the representation; (2) that the representation when made was materially false; (3) that the bankrupt made it with the intent and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation. *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978).

With respect to each of these statutory requirements, the objector has the burden of persuasion by clear and convincing evidence. *Brown v. Buchanan (In re Brown)*, 419 F.Supp. 199 (E.D.Va.1975).

As of January 23, 1970, Anthony Colasante was indebted to the Bank in the amount of $293,497.20 in promissory demand notes. His wife had executed a written guaranty up to $206,670.00. As collateral the Bank received and held corporate stock certificates then valued at $400,000.

The Colasantes also owned real estate estimated to be then worth approximately $1.4 million which had a mortgage of $268,879.03 held by another lending institution. This fact was known to the Bank. At the time of making the loans, and thereafter, the Bank did not seek a recorded, secured interest in the real estate, (N.T. 106) but principally looked to the stock which it held to satisfy the debts. Prior to January 23, 1970, when the value of the stock held had fallen appreciably (N.T. 60, 167–69) the Bank had called Anthony Colasante in, demanding payment or additional stock as collateral. (N.T. 92–93, 107). It accepted additional stock collateral and knew the Colasantes could not pay the demand notes in cash (N.T. 93, 101, 106).

On January 23, 1970, Anthony Colasante was asked by Fred Hoover, Bank Vice President in charge of the loan department, for a current financial statement. The stated purpose of this request was to satisfy a national bank examiner regulation which required the Bank to obtain annual financial statements from large borrowers. (N.T. 75). The Bank, through Mr. Hoover, does not deny that on January 23, 1970, Colasante was apprised that this was the purpose of the financial statement being prepared at that time (N.T. 168). Colasante appeared on January 23, 1970, with a statement of real estate holdings (Exhibit 2), which Hoover found to be insufficient for the needs of the banking department. Thereupon, Hoover and Colasante sat down together and, working from previous financial statements, jointly prepared a schedule of assets and liabilities using figures that the Bank already had on Colasante's mortgage liabilities and net worth of properties. (N.T. 77). Hoover also asked Colasante questions about his assets and liabilities.

Colasante testified that it was his understanding that the Bank's sole objective for requesting the financial statement was to have something on file to satisfy the bank examiners. The January 23, 1970 financial statement can be distinguished from the financial statement previously demanded by the Bank and supplied by Colasante's certi-

fied public accountant. (N.T. 76). In preparing the January financial statement, Hoover and Colasante worked from the previous statement that had been prepared by the CPA. Hoover did not require the January financial statement to be certified nor did he verify with the CPA the information given by Colasante.

Colasante's understanding of the purpose of the January financial statement is consistent with the Bank's actions. Hoover told Colasante at the time of the statement that the purpose of their joint efforts to complete the financial schedules was to generate information sufficient to meet the needs of the bank examiners. The Bank likewise does not contend that Colasante was told that the Bank would rely upon the January settlement to decide whether to call or continue the loans. There also is no evidence that the Bank's possible forbearance was even discussed at that time, let alone requested by Colasante. Furthermore, on January 23, 1970, the Bank did not demand additional collateral. (N.T. 108).

The Bank argues that while Colasante was not told specifically that the Bank was relying on the January statement, he should have known that the Bank was always relying on an honest evaluation or assessment of net worth to determine its position on the demand notes. While this is a reasonable position, it is equally plausible that the debtor believed that the Bank was in fact relying upon the stock which it already held as collateral, as well as any existing perfected interest in the real estate.

I find, as did the Bankruptcy Judge, that the figure recorded for indebtedness to other banks was not intended by either the Bank or Colasante to satisfy anything except the annual bank examination regulation. This is substantiated by the fact that the bank did not attempt to verify the amount which was owed it. Moreover, I find that the amount owed to other banks was not important to the Bank since it could elect to liquidate assets at any time and it depended upon the stock which it held. At that time, the value of the stock exceeded the Bank's loans to the debtors.

The Bank did not call the loan after January 23, 1970. Over a year later, Colasante's creditors forced him to sell his real estate. However, the land sale did not bring as much as the debtors and creditors had expected. Meanwhile, the value of the stock collateral held by the Bank had fallen drastically. The debtors filed for bankruptcy. The Bank, a disappointed creditor, objected to their discharge in bankruptcy.

■ To sustain an objection to the discharge of a bankrupt under § 17(a)(2) on the ground that the bankrupt obtained credit or an extension of credit by issuing a materially false financial statement, it is required that there be more than an untrue statement. *Public Finance Corp.*, 514 F.2d at 1373; *In re Weinroth*, 439 F.2d 787 (3d Cir. 1971); *In re Barbato*, 421 F.2d 1324, 1327 (3d Cir. 1970) affirming order of District Court after hearing on remand directed by Court of Appeals as reported in *In re Barbato*, 398 F.2d 572, 574 (3d Cir. 1968); *Jayne Meadows Travel Agency v. Dashiell*, 416 F.2d 1253, 1254 (9th Cir. 1969); *Schweizer v. City Loan Co. (In re Schweizer)*, 271 F.2d 95, 97 (7th Cir. 1959); *Schapiro v. Tweedie Footwear Corp.*, 131 F.2d 876, 878 (3d Cir. 1942); *Gilpin v. Merchants' Nat. Bank*, 165 F. 607 (3d Cir. 1908); 1A *Collier on Bankruptcy* ¶ 14.40, at 1396, ¶ 17.16, at 1634–35 (14th ed. 1978).

■ The Bank did not present clear and convincing evidence that Colasante's misrepresentation was made with an intent to deceive and with the purpose of causing the bank to forego liquidation of available assets. Had Colasante been bent upon deception, it is reasonable to expect that he would not have intentionally understated the amount of the Bank's loan because this discrepancy would have been readily discovered. Moreover, Hoover assisted Colasante in filling out the form and wrote down the figures himself. The rather inexact methodology utilized by Hoover to obtain the information is more consistent with Colasante's version of the meeting than it is with the Bank's position that the meeting's purpose was to obtain information from which to gauge its future conduct towards the debtors.

The Bank's disappointment in the land sale derived from the fact that it had not thought it provident to record or perfect a lien in the debtor's realty. As of January 23, 1970, had the Bank for some reason attempted to liquidate the real estate, it would have had no greater secured position than it ultimately held as of the date of the land sale. There is no evidence that Colasante ever warranted prior to January 23, 1970 that he would not borrow money from other banks. Of course, the Bank always held the stock and, as to the stock's stated value and that of the real estate, there is no claim of deception. Thus, the Bank has not proved that Colasante's deception as to other bank loans caused it any damage.

Where the evidence as to reliance is equivocal, it has been held that the objector has not met his burden. *In re Howat*, 278 F.2d 582, 584 (7th Cir. 1960). In the case at bar, the Bank's evidence is at best equivocal. There is sufficient evidence to support the conclusion of Bankruptcy Judge Twardowski that the financial statement was obtained by the Bank and given by Colasante not for the purpose of credit extension but to meet a banking regulation and to satisfy bank examiners. *In re Goheen*, 15 F.2d 67 (W.D.Pa.1926).

Regarding the Bank's claim of deception as to Jean Colasante, it is sufficient to say there is *no proof whatsoever that she was* party to the January 23, 1970 financial statement or that she authorized her husband to make a false statement to the Bank as to the extent of their indebtedness.

*Conclusion*

For the foregoing reasons, the Order of Bankruptcy Judge Twardowski dated May 23, 1980, discharging the debts of Anthony D. Colasante and Jean S. Colasante, is affirmed.

An order follows.