In re Albert James BACHER, Debtor.

**DRINKER BIDDLE & REATH, Plaintiff,**

v.

**Albert James BACHER, Debtor-Defendant,**

and

**Max Schwartz, Trustee-Defendant,**

and

**Irene J. Bacher, Jansen Antiques, and Process Improvement Corporation.**

**Bankruptcy No. 82–03135K.**
**Adv. No. 82–2086K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 28, 1985.

Howard Gershman, Blue Bell, Pa., for debtor-defendant.

Max Schwartz, Philadelphia, Pa., for trustee-defendant.

R. Leonard Davis, III, Philadelphia, Pa., for plaintiff.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The complaint filed by the plaintiff-creditor in this adversary proceeding seeks three (3) alternative forms of relief against the debtor. First, the creditor asserts that the debtor should be denied a discharge. Second, the creditor seeks a determination that a particular debt owed is non-dischargeable. Third, the creditor seeks to avoid an alleged transfer of the debtor's interests in certain real and personal property. For the reasons stated herein, we find that the creditor has not established its entitlement to relief in any of these three (3) causes of action. Accordingly, we will deny the relief requested.

The facts in the case are as follows:[1] In the fall of 1980, Albert J. Bacher ("debtor") acquired a controlling interest in Beta Consultants and Administrators ("Beta"), a Pennsylvania corporation. At that time, Beta owed $54,502.19 to the law firm of Drinker Biddle & Reath ("creditor") for legal services. On November 7, 1980, Beta executed a note in favor of the creditor which provided for payment of the debt on an installment basis. On that same date, the debtor entered into a suretyship agreement with the creditor in which the debtor guaranteed satisfaction of Beta's debt in consideration of the creditor's forbearance from seeking to collect immediate payment.

The suretyship agreement noted that the debtor and his wife owned real estate whose sale was contemplated in resolution of a marital dispute, and provided that the creditor receive the debtor's share of the proceeds from such sale to the extent of the amount owing under Beta's note. Four (4) months later, the debtor and his wife entered into a property settlement agreement in which the debtor conveyed his interest in the property to his wife.

The suretyship agreement also provided that the debtor maintain life and disability insurance policies designating the creditor as beneficiary. The debtor purchased the policies, and designated the creditor as the beneficiary on the life insurance policy. Both policies subsequently lapsed for non-payment.

In the spring of 1982, the debtor participated in the creation of a computer software program with the owner of the RTI Insurance Agency ("RTI"), and the owner of Process Improvement Corporation ("PIC"). At about that same time, the debtor became a full-time employee of RTI and, several months later, reached an understanding with its owner and PIC's owner regarding the percentage that he would receive from sales of the computer software program.

In March of 1982, following Beta's default on its note and the debtor's default on his agreement, the creditor confessed judgment against the debtor in the amount of $56,707.87 plus interest and costs. On July 7, 1982, the debtor filed a petition for relief under Chapter 7 of the Code. There was no mention of the computer software program in the schedules.

The creditor's amended complaint is before the Court,[2] Count I of which objects to the debtor's discharge pursuant to § 727(a)(2)(A), (a)(3) and (a)(4)(A) of the Code. Count II seeks a determination of the dischargeability of the debt pursuant to § 523(a)(2)(A) and (a)(4). Count IV[3] seeks an avoidance of the debtor's transfers of real estate and interest in the computer

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

2. As a preliminary matter, we note that the creditor has made a number of claims in its brief that were not included in its amended complaint. Likewise, the creditor has referred this Court to evidence not presented at the hearing. In reaching our determination, we are necessarily limited to the charges brought in the complaint and the evidence admitted at the hearing. Fed.R.Civ.P. 8; *In re Augenbaugh,* 125 F.2d 887 (3d Cir.1942).

3. The creditor withdrew Count III of the complaint which requested the sale of a business that the debtor operated with his second wife pursuant to § 363(h) of the Code.

software program pursuant to § 548(a)(1) and (a)(2).

## Count I

Section 727(a)(2)(A), (a)(3) and (a)(4)(A) of the Code provides that the Court shall not grant the debtor a discharge if the debtor transferred or concealed his property, within one year of the filing of the petition, with an intent to hinder a creditor of the estate; unjustifiably failed to keep or preserve papers from which his financial condition or business transactions might be ascertained; or knowingly and fraudulently made a false oath in connection with the case.

▮▮▮ In support of Count I of the complaint, the creditor argues that the debtor transferred his interest in the computer software program to RTI, and failed to maintain records of the transfer and list the interest in his schedules. The creditor contends that this conduct constitutes grounds for denial of discharge.

As stated above, four (4) months before the filing of the petition, the debtor participated in the creation of a computer software program with the owner of RTI and the owner of PIC. At about the same time, the debtor became a full-time employee of RTI and, several months later, reached an understanding with its owner and PIC's owner regarding the percentage that he would receive from sales of the computer software program. There was no mention of the computer software program in the debtor's schedules.

Discharge will be denied under § 727(a)(2)(A) only if the debtor possessed the actual intent to hinder his creditors. The requisite intent will be presumed where the debtor gratuitously transfers valuable property, or transfers property for inadequate consideration, when pressed

by creditors. 4 *Collier on Bankruptcy,* ¶ 727.02 (15th ed. 1984).

The creditor contends that the debtor's transfer of his interest in the computer software program for inadequate consideration raises the presumption of the debtor's intent to hinder creditors.

We reject the creditor's arguments concerning the transfer and related recordkeeping. The creditor has not only failed to define the debtor's interest in the computer software program, but also has failed to establish the circumstances surrounding any transfer of that purported interest.[4] Therefore, we will deny the relief requested in Count I of the complaint.

## Count II

Section 523(a)(2)(A) and (a)(4) of the Code provides that a debtor may not be discharged from any debt for money, property, services or an extension of credit obtained by false pretenses, a false representation or actual fraud; or from any debt incurred through fraud by the debtor while acting in a fiduciary capacity.

In support of Count II of the complaint, the creditor argues that it extended credit to Beta based on the debtor's guarantee of the debt and that, since the debtor never intended to honor the suretyship agreement, the debt is nondischargeable.

As stated above, Beta executed a note in the creditor's favor which provided for the payment of its debt on an installment basis. The debtor, in turn, guaranteed satisfaction of Beta's debt in consideration of the creditor's forbearance from seeking to collect immediate payment. The suretyship agreement further provided for the creditor's receipt of the debtor's share of the proceeds from a contemplated sale of real estate, as well as the creditor's designation as beneficiary on the debtor's insurance policies. The debtor subsequently con-

---

**4.** A debtor's schedules are accompanied by his assertion that they are "true and correct." Consequently, a debtor is guilty of a false oath under § 727(a)(4)(A), and may be denied a discharge, if he omits items from the schedules.

Because, as noted above, the creditor has failed to establish the debtor's interest in the computer software program, and any transfer of that interest, we reject its assertion that the debtor's omission of the interest from his schedules is a basis for denial of discharge.

veyed his interest in the real estate to his wife, and allowed the insurance policies to lapse.

■ Forbearing collection efforts does not constitute an extension of credit within the meaning of § 523(a)(2)(A). *Cement National Bank v. Colasante* (In re Colasante), Nos. 73–285 to 287, slip. op. (Bankr. E.D.Pa. May 23, 1980), *aff'd on other grounds*, 12 B.R. 635 (E.D.Pa.1981). *Ballard v. Grubbs* (In re Grubbs), 9 B.R. 499 (Bankr.M.D.Ga.1981); *Sample v. Harlan* (In re Harlan), 7 B.R. 83 (Bankr.D.Ariz. 1980). Therefore, we conclude that the creditor may not invoke this provision in attempting to have the debt rendered nondischargeable.

In further support of Count II, the creditor argues that the provision in the suretyship agreement relating to the debtor's real estate created a trust which imposed a fiduciary duty on the debtor. The creditor contends that the debtor's transfer of the real estate constituted fraud committed by the debtor while acting in a fiduciary capacity.

■ Application of § 523(a)(4) has been limited to express trust relationships, and not to those implied from contract.[5] *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). Moreover, the trust relationship must exist before the incident creating the contested debt, and may not originate from the act from which the debt arose. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Jacobs v. Ballard* (In re Ballard), 26 B.R. 981 (Bankr.D.Conn.1983); *Great American Insurance Co. v. Storms* (In re Storms), 28 B.R. 761 (Bankr.E.D.N.C.1983). Because no express trust relationship existed between the debtor and the creditor, we

conclude that the debtor was not acting in a fiduciary capacity. Therefore, the debt may not be rendered nondischargeable under this provision. Count II of the complaint will be dismissed.

*Count IV*

■ Section 548(a)(1) and (a)(2) of the Code provides that the trustee may avoid any transfer of the debtor's interest in property which took place within one (1) year of the filing of the petition if the debtor made the transfer with actual intent to defraud any entity to which the debtor was indebted, or if the debtor received less than a reasonably equivalent value in exchange for the transfer.

In support of Count IV of the complaint, the creditor argues that the debtor's transfer of his interest in real estate was made with intent to defraud the creditor, and that the debtor received less than a reasonably equivalent value in exchange for the transfer of his interest in the computer software program.

The § 548 avoidance power is available solely to the trustee, and not to creditors. *Appel v. Steamboat Ski Corp* (In re Smythe) 28 B.R. 882 (Bankr.D.Colo.1983); *Citicorp v. Davidson Lumber Co.* (In re Davidson Lumber Co.), 19 B.R. 871 (Bankr. S.D.Fla.1982); *In re Phelmetta*, 7 B.R. 461 (Bankr.D.Conn.1980); *In re Lang*, 5 B.R. 371 (Bankr.S.D.N.Y.1980). Therefore, the creditor does not have standing to bring a cause of action under this provision.[6] Count IV of the complaint will be dismissed.

In summary, we will deny the relief requested in the creditor's complaint.

---

5. Where state statutes impose trust-like obligations on parties engaging in certain kinds of contracts, contracting parties *may* be trustees subject to § 523(a)(4) liability. *Angelle v. Reed* (In re Angelle), 610 F.2d 1335 (5th Cir.1980) (construing § 17 a(4) of the Bankruptcy Act which is the predecessor of § 523(a)(4) ).

6. Although a creditor may not bring suit on its own behalf to avoid a preference or fraudulent transfer, in certain circumstances it may be appropriate for it to move for leave to bring such a suit in the trustee's stead. *In re Philadelphia Light Supply Co.*, 39 B.R. 51 (Bankr.E.D.Pa. 1984); *Committee of Unsecured Creditors v. Monsour Medical Center* (In re Monsour Medical Center), 5 B.R. 715 (Bankr.W.D.Pa.1980). We have no such motion before us.