**In the Matter of Kenneth J. BROHOLM and Lisa M. Broholm, Debtor.**

**John Deere Company, a division of Deere & Company, a Delaware corporation, Plaintiff,**

**v.**

**Kenneth J. Broholm and Lisa M. Broholm, Defendants.**

**Bankruptcy No. 03 B 09310. Adversary No. 03 A 04458.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 14, 2004.

Paul Harrison Stacey (Law Offices of Paul Harrison Stacey), for Plaintiff.

Paul M. Bauch (Bauch & Michaels), for Defendants.

## *MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS*

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary arises from the consolidated bankruptcy case of Kenneth J. and Lisa M. Broholm ("Broholms" or "Debtors"). John Deere Company ("Plaintiff"

or "Deere") filed a tencount complaint seeking a determination as to whether debt owed to it by the Broholms is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Deere also objects to discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(7). The Debtors now move to dismiss for failure to satisfy the particularity requirements of Fed.R.Bankr.P. 7009(b); failure to plead a prima facie case for the actions alleged; and failure to otherwise set forth claims upon which relief may be granted pursuant to Fed. R.Bankr.P. 7012(b)(6). For reasons stated herein, Debtors' Motion to Dismiss is denied as to all counts.

## STANDARDS APPLICABLE TO MOTIONS TO DISMISS

Motions to Dismiss are considered under Rule 12 Fed.R.Civ.P. pursuant to Fed. R.Bankr.P. 7012. The purpose of the motion is to test the sufficiency of the Complaint, not to decide the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993). Accordingly, well-pleaded allegations of the complaint are assumed to be true and read in the light most favorable to plaintiff. *United Independent Flight Officers v. United Air Lines,* 756 F.2d 1262, 1264 (7th Cir.1985); *Haroco, Inc. v. American Nat'l Bank and Trust Co.,* 747 F.2d 384, 385 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). If a complaint contains allegations from which the trier may reasonably infer that evidence on the necessary elements of proof are available for trial, the complaint may not be dismissed. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 421 (7th Cir.1994). While the discussion below covers allegations as to each count, that discussion is not finally dispositive of legal issues presented, and certainly does not decide any factual issues.

## IN THE COMPLAINT

John Deere Company, a division of Deere & Company, is a Delaware corporation doing business in Illinois. Deere is a manufacturer and distributor of agricultural equipment, lawn mowers, tractors and related equipment and accessories. Compl. ¶ 1. The Debtors Kenneth and Lisa Broholm are Illinois citizens and are the sole owners and officers of Equipment Services & Sales, Inc. ("ESS"). Compl. ¶ 8; Answ. ¶ 8. ESS is an Illinois corporation.

### The Dealer Agreements

In 1995, ESS applied to become an authorized dealer of John Deere equipment. Compl. Exh. A, John Deere Lawn and Garden Dealer Agreement. Authorized dealers enjoy the right to merchandise, John Deere equipment and, subject to Deere's approval, the right to participate in certain dealer financing programs.

On June 30, 1995 Deere granted ESS the right to merchandise equipment from Deere's Lawn and Garden Products Line and, in exchange, ESS granted Deere a security interest in its inventory of goods and proceeds and its accounts with Deere. Compl. Exh. A, John Deere Lawn and Garden Dealer Agreement.

ESS also applied to participate in two programs financed by Deere, the Dealer Finance Program and the Revolving Plan Agreement. Compl. Exh. A, Dealer Finance Agreement, John Deere Credit Lawn & Grounds Care Revolving Plan Dealer Agreement. Under the Dealer Fi-

nance Agreement, ESS promised to submit its customer installment contracts to Deere for financing and granted Deere a security interest in these contracts and the equipment subject to those contracts. Compl. Exh. A, Dealer Finance Agreement, ¶ 1.4.7. The Revolving Plan Agreement enrolled ESS into a financing program where Deere provided credit to ESS' customers for their purchases. Exh. A, John Deere Credit Lawn & Grounds Care Revolving Plan Dealer Agreement. Deere accepted both applications on June 30, 1995.

In connection with the ESS' application to become an authorized John Deere dealer, both Kenneth and Lisa Broholm promised to personally guarantee ESS' debt. Compl Exh. A, John Deere Dealer Guaranty.

The Broholms also executed personal financial statements attesting to their personal financial condition and creditworthiness in 1997 and 2000. Compl. ¶ 31. In their 1997 personal financial statement, Lisa and Kenneth Broholm listed their assets as exceeding $1.6 million. Compl Exh. B, 1997 Personal Financial Statement. In their 2000 personal financial statement, Lisa and Kenneth Broholm asserted that they possessed assets and equity valued in excess of $325,000. Compl. Ex. B, 2000 Personal Financial Statement. The 2000 statement provided that the information submitted was accurate as of March 31, 2000. The statements, signed by each of the Broholms, provided that all information contained therein was true, and that the statements were to be construed as a "continuing statement" obligating the Broholms to advise Deere of any material changes in their financial condition. Compl. Exh. B, 1997 Personal Financial Statement, 2000 Personal Financial Statement.

In 1999, Deere granted ESS a line of credit of $150,000.00 and agreed to make periodic advances up to this amount. Compl. Exh. A, Rental Line of Credit and Security Agreement. The Agreement provided that Deere could withhold the advances under certain conditions including insolvency or the termination of ESS' appointment as an authorized John Deere Dealer. Compl. Exh. A, Rental Line of Credit and Security Agreement, ¶ 6 at 3.

***The 2003 Staged Theft***

In January 2003, the Broholms allegedly masterminded a staged "theft" of ESS' equipment with the assistance of two of their employees, Adam Page ("Page") and Daniel Sichling ("Sichling"). Compl. ¶ 19. Page and Sichling apparently removed Deere's collateral from ESS's premises to a warehouse in Thornton, Illinois, and sold the collateral for approximately $50,000. Compl. ¶ 20. Deere alleges that Kenneth Broholm orchestrated the scheme and induced Page and Sichling into participating by promising them a share of the cash proceeds and assuring them that he would "lose the paperwork" for the stolen property in the subsequent bankruptcy proceeding. Compl. ¶ 25.

ESS subsequently defaulted on its dealer agreements and, pursuant to its contractual obligations, surrendered some of its collateral to Deere. Compl. ¶ 21. At the time of this surrender, the Broholms stated nothing about the stolen collateral. Deere conducted a subsequent inventory discovering that collateral was missing. Deere had not received payment for the missing collateral. Compl. ¶ 23. Kenneth Broholm explained that he did not notice the missing collateral at the time it was taken and declared to the Plaintiff, the police authorities, and in his Rule 2004 examination (in the subsequent bankruptcy proceeding) that he had no knowledge of the theft. Compl. ¶ 24.

Two months after the alleged theft, in March 3, 2003 the Broholms sought relief under Chapter 7 of Title 11 of the United States Bankruptcy Code. ESS also filed a bankruptcy petition under Chapter 7 of Title 11 of the Code on the same date. ESS scheduled Deere as a creditor due approximately $132,362.00. Compl. Exh. D, Schedule F. The Broholms scheduled Deere as a creditor for the same amount. Compl. Exh. C, Schedule H.

Deere filed the instant Adversary Complaint on November 14, 2003, contending that the Broholms' should be denied a discharged for their complicity in the staged theft and their failure to account for the disposition of the stolen collateral in their bankruptcy petitions.

### *JURISDICTION*

Jurisdiction over this matter lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a). Determinations of the dischargeability of a debt and objections to discharge are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper under 28 U.S.C. § 1409.

### *DISCUSSION*

#### *False Pretenses, False Representation and Fraud In Count I*

11 U.S.C. § 523(a)(2)(A) provides, in relevant part,:

> A discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

This Section includes false pretenses, false representation, and actual fraud.

#### *False Pretenses And False Representation*

False pretenses and false representation require the plaintiff to allege that (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite scienter, i.e. he actually intended to deceive the plaintiff; and (iii) to his detriment, the plaintiff justifiably relied on the misrepresentations. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Mayer,* 51 F.3d 670, 673 (7th Cir. 1995), *cert. denied* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995). False pretenses has been defined as:

> "A series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding or a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor ... A false pretense is usually ... the product of multiple events, acts, or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A 'false pretense' is established or fostered willfully, knowingly and by design; it is not the result of inadvertence."

*In re Paneras,* 195 B.R. 395, 406 (Bankr. N.D.Ill.1996) (quoting *In re Dunston,* 117 B.R. 632, 641 (Bankr.D.Colo.1990), aff'd in part, rev'd in part, 146 B.R. 269 (D.Colo. 1992)).

The Debtors assert that the Complaint does not state a claim for false representation and false pretenses. Debtors' Motion to Dismiss at 5. Specifically, the Debtors

assert that the theft and concealment of the theft appear to have been made after Deere extended credit to ESS. As a result, according to the Debtors, Kenneth Broholm's alleged misrepresentations was not the cause of Deere's decision to extend credit.

Deere responds that the Broholms were contractually obligated to notify it of the theft, but Kenneth Broholm lied and withheld his involvement. Compl. ¶ 24. Deere alleges that as a result of Kenneth Broholm's misrepresentations, Deere was denied its contractual rights as a creditor. Compl. ¶ 29.

### *The Complaint Pleads the Elements of False Pretenses and False Misrepresentation*

The issue in dispute is whether, during this period, Kenneth Broholm's misrepresentations induced Deere into continuing its business relationship with ESS and whether this continuation constitutes a basis for denying a discharge under Section 523(a)(2)(A).

Deere was contractually obligated, as long as ESS was not in default, to honor ESS' dealer financing and credit agreements. *See e.g.,* Exh. A, Rental Line of Credit and Security Agreement ¶ 1. If Kenneth Broholm had disclosed his alleged involvement in the theft, Deere most assuredly would have terminated ESS' authorized dealer status and the dealer financing it received. This was Deere's contract right-as illustrated by several provisions in the agreements signed by the parties. For instance, the Dealer Agreement provided that any fraudulent conduct by ESS constituted a default and permitted Deere to terminate ESS' privileges as a John Deere dealer including the right to declare all debt immediately due and payable. Compl. Exh. A, Dealer Agreement, ¶ 10(a)(iii), ¶ 11. The Dealer Finance Agreement likewise provided that Deere would suspend all financing if ESS engaged in specified misconduct. Compl Exh. A, Dealer Finance Agreement 1.4.3, 1.4.7. The Rental Line of Credit and Security Agreement further provided that Deere could suspend ESS's line of credit if ESS lost its dealership privileges. Compl. Exh. A, Rental Line of Credit and Security Agreement, ¶ 1(a).

After the termination of ESS' dealership status, Deere would then have called in ESS' debt and attempted to enforce the Broholms personal guarantee. This too was Deere's contract right. *See* Compl. Exh. A, John Deere Dealer Guaranty. Kenneth Broholm's concealment of his involvement in the scheme, at least for the short term, avoided this scenario.

His alleged misrepresentation also prevented Deere from exercising other legal and contractual rights—its right to take steps to secure its collateral remaining in ESS' possession and its right to recover under non-bankruptcy law for its security interest in ESS's accounts. The exercise of any of these remedies would have increased ESS' debt and concomitantly increased the amount the Broholms owed to Deere under their guarantee.

Kenneth Broholm's conduct–fraudulent concealment inducing the forbearance of certain contractual rights–has been found to be tantamount to an extension of credit obtained by false pretenses and fraud under § 523(a)(2)(A). *Field v. Mans (In re Mans),* 157 F.3d 35 (1st Cir.1998). That Section disallows a discharge for "an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, false misrepresentation or actual fraud." 11 U.S.C. § 523(a)(2)(A).

In *Field,* 157 F.3d 35, the Debtor covenanted not to convey property without the written consent of the mortgagees or else the unpaid balance and interest of the

mortgage and promissory note became immediately due and payable. The Debtor subsequently conveyed the property without the consent of the mortgagee. The First Circuit held that Debtor's conduct mislead the mortgagees into not exercising their acceleration right, thus causing an involuntary extension of credit by false pretenses. The Court reasoned:

> "As the [mortgagees] would or could have called the note had they known the truth, [the Debtor's] fraud tended to perpetuate—hence 'extend'—credit that otherwise the [mortgagees] would or could have stopped ... As a result of the deceit, [the Debtor] could hope to continue to enjoy the on-going credit arrangement which the [mortgagees] might otherwise have ended."
>
> *Id.* at 43–45.

This reasoning has also been followed in this Circuit. *See, e.g. Bednarsz v. Brzakala (In re Brzakala),* 305 B.R. 705, 712 (Bankr.D.Ill.2004); *Chapman v. Frakes,* No. 91 C 6001, 1991 WL 247602, 1991 U.S. Dist. LEXIS 16783 (N.D.Ill. November 15, 1991); *Marine Bank Southwest N.A. v. Hoffman (In re Hoffman),* 80 B.R. 924 (Bankr.N.D.Ill.1988).

In *Hoffman,* plaintiff Bank loaned funds to the debtor's company. The debtor agreed to personally guaranteed the loan and submitted false financial statements to the Bank. The court held that the submission of the false financial statements "lull[ed] the Bank into a false sense of security" causing the Bank not to accelerate the loan and call for the immediate payment of the debtor's guaranty. The court held that this was the equivalent of an extension of credit, since the Bank did not enforce a contractual right to collect on a debt for some defined or undefined period of time. *Id.* at 927.

Some courts disagree that conduct preventing a creditor from exercising its contract right is non-dischargeable under § 523(a)(2). Compare *Field v. Mans,* 157 F.3d 35, 43 (1st Cir.1998); *National City Bank v. Plechaty (In re Plechaty),* 213 B.R. 119, 124–126 (6th Cir. BAP 1997); *John Deere Co. v. Gerlach (In re Gerlach),* 897 F.2d 1048, 1051 (10th Cir.1990); with *Wolf v. Campbell (In re Campbell),* 159 F.3d 963, 966 (6th Cir.1998); *Telmark, LLC v. Booher (In re Booher),* 284 B.R. 191, 202–204 (Bankr.W.D.Pa.2002); *In re Schmidt,* 70 B.R. 634, 644–645 (Bankr. N.D.Ind.1986); *Drinker Biddle & Reath v. Bacher (In re Bacher),* 47 B.R. 825, 829 (Bankr.E.D.Pa.1985); and *Cement Nat'l Bank v. Colasante (In re Colasante),* 12 B.R. 635, 636–638 (E.D.Pa.1981).

For purposes of this motion, the circumstances alleged in this case show support for nondischargeability. Kenneth Broholm's failure to disclose his alleged participation in the theft permitted both of the Broholms to reap the benefit of the ongoing financing arrangement between Deere and ESS, the avoidance of default and the immediate enforcement of their personal guarantee. Similarly, Deere was deprived of its contractual right to call in the guaranty, pursue collection remedies and protect its collateral. Kenneth Broholm's conduct created a false impression to which Deere relied to its detriment. *See Peterson v. Bozzano (In re Bozzano),* 173 B.R. 990 (Bankr.M.D.N.C.1994) ("omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor.") On the basis of these allegations, Deere has adequately pleaded the elements of false pretenses and false representations under Section 523(a)(2)(A).

***Fraud***

■ The Debtors argue that Deere failed to comply with the higher pleading

requirements for fraud under Federal Bankruptcy Rule 7009, and therefore any claim for fraud should be dismissed. Debtors' Motion to Dismiss at 6.

At this stage it is not necessary that a plaintiff expressly plead each element of fraud, so long as the circumstances which may constitute fraud have adequately been set forth. *See Midwest Grinding, Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992). A complaint need only allege the basic outline of fraud and indicate who made the misrepresentations and the time and place the misrepresentations were made. *Vicom v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (2d.1992)). Rule 9(b) requires the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." However, mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and may warrant dismissal. *Veal v. First Am. Sav. Bank,* 914 F.2d 909, 913 (7th Cir.1990).

Actual fraud asserted under 523(a)(2)(A) requires a plaintiff to allege that (1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and (3) the fraud gave rise to the debt that is the subject of the discharge dispute. *McClellan v. Cantrell,* 217 F.3d 890, 893–894 (7th Cir.2000). *McClellan* further explained that

> "[f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of truth." *Id.* at 893.

Plaintiff's Complaint alleges a detailed scheme to steal its collateral by the Broholms and their employees. The Debtors' fraudulent intent may be inferred from this allegation. The Complaint further alleges that this theft caused Deere the loss of its collateral, thereby producing a debt. Compl ¶ 23. *McClellan's* definition of fraud is satisfied.

The Debtors claim that the Complaint fails to state a claim for fraud or false pretenses as to Lisa Broholm since the Complaint does not contain an allegation specific to her. However, many of the allegations contained in the Complaint are premised on the fact that the Broholms, as the sole owners of ESS, acted jointly and in concert. That the Complaint does not contain allegations specifically mentioning Lisa Broholm does not make the Complaint defective. *See ABC–NACO, Inc v. DeRuyter,* No. 99–C–1969, 1999 WL 521171at *4, 1999 U.S. Dist. LEXIS 11025 at *8 (N.D.Ill. July 13, 1999) ("complaint is not defective simply because it occasionally refers to the DeRuyters collectively, as many of its allegations are premised on its position that the DeRuyters, as prior owners of Deco Automation and Deco Industries, acted as a single business entity"). Accepting all of the Plaintiff's allegations as true, Plaintiff has sufficiently set forth, with the necessary specificity, a cause of action for actual fraud under § 523(a)(2)(A).

### *Materially False Statement Under Count II*

11 U.S.C. § 523(a)(2)(B) states in relevant part:

> A discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refi-

nancing of credit, to the extent obtained by the use of a statement in writing

 (i) that is materially false;

 (ii) respecting the debtor's or an insider's financial condition;

 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

 (iv) that the debtor caused to be made or published with the intent to deceive.

In their 2000 Personal Financial Statements, the Broholms listed their assets and liabilities as of April 2000. The Broholms promised:

> "Each of the undersigned agrees to notify [Deere] immediately and in writing of ... any material adverse change (1) in any information contained in this statement or (2) in the financial condition of the undersigned or (3) in the ability of the undersigned to perform its (or their) obligations to you. In the absence of such notice or a new and full written statement, this should be considered as a continuing statement and substantially correct."

Compl. Exh. B, 2000 Personal Financial Statement. Deere claims that this provision created a continuing contractual obligation on the part of the Debtors to report any material adverse changes in their financial condition. Compl. ¶ 33. Subsequent to 2000, the Broholms suffered severe financial losses. They did not, however, disclose these changes and Deere continued to deliver goods to ESS on credit. Compl. ¶ 34–35; Answ. ¶ 35. Deere alleges that the failure to report such changes constitutes a basis for rendering the debt non-dischargeable under 523(a)(2)(B). Compl. ¶ 36.

The Debtors disagree, contending that the financial statement was not false at the time of its making and thus could not have been a materially false statement within the meaning of the statute. Debtors Motion to Dismiss at 6. The Debtors contend that *First National Bank of Elgin v. Nilles,* 35 B.R. 409 (N.D.Ill.1983) holds that financial statements are simply a "photograph of financial affairs as of the date they bear" and the contractual language above imposes a duty to provide accurate information only on the date of signing. *Id.* at 410.

In *First Nat'l Bank* the Debtor submitted a personal financial statement along with a loan application to the Bank. The financial statement contained identical language to the statement signed by the Broholms. The Debtor stated that the information was accurate as of January 5, 1981 but the Debtor did not list a loan he received on January 26, 1981. The Bankruptcy Judge held that the contractual language only obligated the Debtor to provide an accurate picture of his financial condition on January 5.

District Court Judge Grady, however, expressly overruled the Bankruptcy Judge's holding. *Id.* at 410. Judge Grady reasoned that parties have a duty of fair dealing and that one who makes an incorrect statement he has reason to believe another is relying upon is under a duty to correct it. Accordingly, Judge Grady concluded that the Debtor had an obligation to provide the Bank not just information which was technically not untrue but with "a complete and accurate picture of his financial status at the time of the loan." *Id.* at 410.

Judge Grady held that a financial statement can be literally true within the four corners of the document but still be materially false if it is a material misrepresentation of the debtor's financial condition. *Id.* at 411.

This holding is especially apt here. When the Broholms became aware of their deteriorating financial condition they were contractually obligated to notify Deere and amend their financial statements. Their deliberate failure to do so made the financial statements false since they no longer provided an accurate picture of the Broholms' financial condition. Concealment of a material fact has long been recognized as a basis for fraud. *See In re Milbank,* 1 B.R. 150, 154 (Bankr.S.D.N.Y.1979). The materially false element of § 523(a)(2)(B) has been satisfied.

The Debtors argue in the alternative that the Broholms' personal guarantee negated the Debtors obligation to provide financial information. The personal guarantee, according to the Debtors, required that all financial information must be requested by Deere. Debtors' Supp. Memo at 4. Reasoning further, the Debtors argue that any other document providing otherwise is barred by the terms of the Broholm's guarantee and the parole evidence rule.

The parol evidence rule provides that evidence of prior or contemporaneous agreements or negotiations may not be introduced to contradict the terms of a partially or completely integrated contract. *Merk v. Jewel Food Stores Div. of Jewel Companies, Inc.,* 945 F.2d 889, 892 (7th Cir.1991). The problem with the Debtors' argument is that Deere is not attempting to contradict the terms of the guarantee. That contract contained the Broholms personal guarantee of ESS' debt. The Broholms' personal financial statements, served a separate purpose, they factored into Deere's decision to continue advancing credit to ESS. Nothing contained in personal financial statements contradicts the personal guarantee. The parole evidence rule is thus inapplicable and the Debtors argument is rejected.

The remaining elements of § 523(a)(2)(B)—intent and reliance—have been satisfied for purposes of this motion. The Broholms' intent to deceive may be inferred from the fact that (1) they were aware that Deere relied on their financial statements to extend credit to ESS, (2) they were aware of their duty to disclose adverse changes in their financial condition, (3) they failed to do so after suffering severe financial losses, (4) Deere continued to extend credit to ESS after their losses and (5) the Broholms accepted this credit. Compl. ¶ 35; Answ ¶ 35.

Furthermore, the reliance element is satisfied since Deere was unaware of the Debtors financial losses and continued to ship goods. Deere has adequately pleaded a cause of action under Section 523(a)(2)(B).

***Larceny Under Count III***

11 U.S.C. § 523(a)(4) provides in relevant part:

> A discharge under § 727 of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Deere alleges that the staged theft from ESS and retention of funds by the Debtors constitutes a larcenous taking of property. Compl ¶ 38.

Larceny requires a showing that the debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to its own use without the owner's consent. *In re Rose,* 934 F.2d 901 (7th Cir.1991).

Deere has pleaded the circumstances of the theft; the retention of funds by the Broholms; and alleged its ownership rights in the stolen collateral through the financing and dealer agreements. Compl.

¶¶ 19–28, Exh. A. Deere sufficiently alleges a cause of action for larceny.

***Willful and Malicious Conversion Under Count IV***

11 U.S.C. § 523(a)(6) in relevant part states:

> A discharge under § 727 of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

Deere alleges that the retention of the proceeds of its collateral constitutes a willful and malicious conversion. Compl. ¶¶ 39–40.

To establish a cause of action for conversion under Section 523(a)(6), Deere must plead that (i) the Broholms caused a conversion of its property; (ii) that their actions were malicious; and (iii) willful.

A conversion has been defined as any unauthorized act, which deprives an owner of property permanently or for an indefinite period of time. *In re Thebus,* 108 Ill.2d 255, 259, 91 Ill.Dec. 623, 625, 483 N.E.2d 1258, 1260 (1985). Deere has adequately pleaded that the theft scam deprived them of their ownership rights in the collateral. The conversion element has been met.

Willful means a palpable intent to cause injury, not merely the commission of an intentional act that happens to result in an injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Deere alleges that the Broholms purposefully stole and breached their dealer agreements to evade their contractual obligations and payment of debt. Compl. ¶¶ 19–29. The willful element has been met.

"Malicious" means "in conscious disregard of one's duties or without just cause or excuse...." *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). The test for maliciousness under Section 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Park Nat. Bank & Trust v. Paul (In re Paul),* 266 B.R. 686, 696 (Bankr.N.D.Ill.2001). The Complaint alleges the Broholms' planning and direction of the alleged theft, the loss of Deere's collateral and the Broholms' concealment of the theft. Compl. ¶¶ 19–29. This satisfied the malicious element. Deere has sufficiently alleged a cause of action for willful and malicious conversion.

***Concealment of Property of the Estate Under Count V***

11 U.S.C. § 727(a)(2) states in relevant part:

> The court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year of the date of the filing of the petition, or property of the estate after the date of the filing of the petition.

This Section requires: (1) that the debtor transferred or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey),* 145 B.R. 919, 926 (Bankr.N.D.Ill. 1992).

The Debtors contend that Deere fails to set forth a prima facie case under this Section. Debtors' Motion to Dismiss at 8.

Deere alleges that the Broholms' transferred collateral, including property of the estate, through their involvement in the alleged theft scam. Compl. ¶ 21. The alleged theft occurred two months prior to their bankruptcy filing. Deere further alleges that the Broholms' deliberately concealed their involvement in the alleged theft in order to continue receiving financing to ESS. Compl. ¶¶ 26–27. Deere's complaint alleges the necessary elements of Section 727(a)(2) and the Debtors' motion to dismiss Count V is denied.

### *Destruction and Concealment of Records Under Count VI*

11 U.S.C. § 727(a)(3) states in relevant part:

> The court shall grant the debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of this section is to make the privilege of discharge dependent upon a true presentation of the debtor's financial affairs. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 969 (7th Cir.1999). Creditors should receive sufficient information to enable them to trace a debtor's financial history, ascertain the debtor's financial condition, and reconstruct the debtor's financial transactions. *Id.*

Section 727(a)(3) requires proof of a transfer or removal of assets, a destruction or other wasting of assets, or a concealment of assets. *Scott,* 172 F.3d at 969. Intent to defraud is not necessary to show a violation of § 727(a)(3). *Id.* The text of the statute does not merely require the debtor not to lose any records; it also authorizes a denial of discharge for a failure to act unless such failure to act is justifiable. This language places an affirmative duty on any debtor to create books and records accurately documenting business affairs. *Id.*

The Complaint alleges that the Debtors destroyed various computerized records pertaining to ESS's inventory and failed to maintain any records of the off-site sales of "stolen" property taken through the theft scheme. Compl. ¶¶ 46–47. In order to induce Page and Sichling's participation, the Broholms allegedly promised to lose the paperwork. Compl.¶ 25. Furthermore, the complaint alleges that the Debtors failed to maintain any records of the off-site sales of the "stolen" property. Compl. ¶ 46.

The Broholms insist that the Complaint is defective because it does not specify the type and nature of the destroyed records. Debtors' Motion to Dismiss at 9. Motions to dismiss require that all allegations contained in the complaint are assumed to be true and read in the light most favorable to the Plaintiff, *United Air Lines,* 756 F.2d at 1264. The lack of specificity in the complaint therefore does not make the complaint defective. Accordingly if, as the Complaint alleges, the Broholms destroyed or misplaced records in an attempt to cover up the alleged theft, then they have violated their duty under § 727(a)(3). Deere has sufficiently alleged a cause of action under Count VI.

### *Filing Of False Petitions And False Oaths Under Count VII*

11 U.S.C. § 727(a)(4) states in relevant part:

> The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in connection with the case: (A) made a false oath or account; (B) presented or used a false claim; (C)

gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

The purpose of § 727(a)(4) is to enforce the debtor's duty of disclosure and to ensure that the debtors provide reliable information to those who have an interest in the administration of the estate. *Stathopoulos v. Bostrom (In re Bostrom),* 286 B.R. 352, 359 (Bankr.N.D.Ill.2002). For purposes of § 727(a)(4), a debtor's petition and schedules, statement of financial affairs, statements made at a § 341 creditor's meeting, and testimony at a Rule 2004 examination all constitute statements that are made under oath. *Id* at 359–60. Filing of false schedules with material omissions or representations with an intent to mislead creditors as to the debtor's financial condition constitutes a false oath under Section 727(a)(4). *Id.* at 360.

Deere alleges several false representations and omissions related to the bankruptcy case, knowingly made by Debtors with the intent to deceive. Compl. ¶¶ 48–51. Specifically, Debtors' petitions fail to disclose the disposition of the "stolen" property or receipt of the cash proceeds from selling this property; Kenneth Broholm's statements at his Rule 2004 examination that he had no knowledge of the theft scheme or that any property was even stolen from ESS's premises; and the Broholms' failure to disclose in their petitions complete and accurate records of their property and financial affairs. Compl. ¶¶ 49–51. These allegation sufficiently allege a cause of action under § 727(a)(4). Therefore, Deere is entitled to proceed under the seventh count of its Complaint.

***Debtor's Failure to Explain the Loss of Assets under Count VIII***

11 U.S.C. § 727(a)(5) states in relevant part:

> The court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily before determination under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs.

A discharge may be denied where the debtor does not adequately explain a shortage, loss, or disappearance of assets. *Bostrom,* 286 B.R. at 364. The Court's focus is not the wisdom of the debtor's disposition of assets, but rather the truth, detail, and completeness of the debtor's explanation of the loss. *Id.*

In order to establish a violation of Section 727(a)(5), Plaintiff would first need to plead that the Debtors at one time owned substantial and identifiable assets that are no longer available for their creditors. Secondly, Plaintiff would need to plead that Debtors are obligated to provide a satisfactory explanation for the loss. *Id.* To be satisfactory, a defendant's good faith explanation must be supported by at least some documentation, and must be sufficient to eliminate the need for speculation as to the disposition of the defendant's assets. *Id* at 364–65. Finally, a defendant's documentation must be presented in a concise, organized, and perspicuous manner. *Spirk v. Sullivan,* No. 02–C–9228, 2003 WL 22048077 at *4, 2003 U.S. Dist. LEXIS 15109 at *11 (N.D.Ill. Aug. 28, 2003).

Deere alleges that the Debtors at one time owned substantial equity and assets. Deere further alleges that the Debtors have failed to satisfactorily explain the dis-

appearance of assets listed on their financial statement or the assets that were subject to the alleged fraudulent scheme. Deere has plead ownership of the assets and that the assets are no longer available. Compl. ¶¶ 52–54. The requirements of Section 727(a)(5) have been pleaded.

### *Count IX*

11 U.S.C. § 727(a)(7) states in relevant part:

> The court shall grant the debtor a discharge, unless the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

Plaintiff has sufficiently alleged causes of action under 727(a)(2), (3), (4) and (5) of this Section in Counts V, VI, VII, and VIII of its Complaint, therefore Count IX is adequately pleaded.

### *Declaratory Judgment Under Count X*

Plaintiff seeks a declaratory judgment objecting to discharge. It does not plead elements under one of the statutes applicable to bar discharge in this count, but it is not necessary to do so. Rule 7008 Fed.R.Bankr.P. requires only enough to allow understanding of the gravamen of the Complaint; the Complaint should not be dismissed so long as facts that would make out in claim can be hypothesized. *Graehling v. Village of Lombard,* 58 F.3d 295, 297 (7th Cir.1995). *See also McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir.2000). A complaint need only state the nature of a claim. *Alliant Energy Corp. v. Bie,* 277 F.3d 916, 919 (7th Cir.2002).

Particularly in context of the detailed factual allegations in the earlier counts, the alleged basis for relief sought in Count X is quite clear.

### *CONCLUSION*

For reasons stated the Debtors' Motion to Dismiss will by separate order be denied as to all counts.